STATE of Minnesota, Respondent,

v.

Jason Derek HART, Appellant.

No. C8–91–517.

Court of Appeals of Minnesota.

Nov. 26, 1991.

Review Denied Jan. 16, 1992.

734

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, Timothy F. Faver, Beltrami County Atty., Bemidji, for respondent.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and RANDALL, and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

Appellant Jason Hart was charged with two counts of first degree criminal sexual conduct and two counts of first degree burglary in violation of Minn.Stat. §§ 609.-342, subds. 1(c), (e)(i), 609.582, subds. 1(a), (c) (1990). Appellant was found guilty by a jury and convicted of one count of criminal sexual conduct and one count of burglary. The trial court sentenced appellant to concurrent terms of 244 months for the criminal sexual conduct conviction and 34 months for the burglary conviction. The 244 month sentence is a double upward durational departure.

## FACTS

At approximately 3:00 a.m. on September 1, 1990, complainant awoke to find a man standing at the foot of her son's bed. The man, later identified as appellant, told her to go back to her room and to lay down on the bed. Complainant complied and appel-

lant then raped her. He penetrated her five times, vaginal, oral, anal, then again oral and vaginal. Complainant testified the anal penetration was painful and caused her to bleed. During the subsequent oral penetration, complainant could taste her own blood. Complainant talked to him throughout the assault, trying to get him to stop. He would respond by saying "shut up" and pulling on her hair. Some of her hair was pulled out.

Complainant testified she did not struggle or scream so her sons would not awaken. She was concerned about what they would see and that they would be hurt. She thought the son in the bedroom where appellant entered was already hurt. After the assault, appellant said he wanted money. Complainant did not have a chance to check on her sons as appellant pulled her down the hall. Appellant looked throughout the house for money. At one point, appellant stood very close to complainant and made her look at him. Complainant thought he was going to kill her because she could identify him. Appellant left on foot, taking some electronic items with him.

Appellant testified at trial he did not remember anything from the previous night other than drinking with friends. He thought he had done something wrong when he saw electronic items around him upon awakening and saw police in the area. He hid some of the items in the house and then tried to leave. Appellant also testified he had previously experienced black-out periods after drinking, after which he did not remember his actions. Complainant testified appellant did not appear drunk.

The trial court deleted the word "intentionally" from the standard jury instruction for first degree criminal sexual conduct.[1] In addition, the trial court refused to include an instruction on third degree crimi-

nal sexual conduct as a lesser included offense.

The trial court instructed the jury on the two counts of first degree criminal sexual conduct by reciting the elements of each crime, and then, where the subdivisions differed, rather than giving separate instructions on each count, recited the elements necessary for conviction in the disjunctive ("either/or"). Only one verdict form was submitted to the jury for each crime, not one form for each count. The trial court did give the jury instruction discussing the requirement for a unanimous jury verdict.

## ISSUES

1. Did the trial court err by deleting "intentionally" from the standard jury instructions for first degree criminal sexual conduct?

2. Did the trial court err by refusing to give an instruction on third degree criminal sexual conduct as a lesser included offense?

3. Did the trial court err by not specifying separate essential elements and a separate verdict form for each of the two counts of first degree criminal sexual conduct?

4. Did the trial court err by giving a double upward durational departure sentence for the criminal sexual conduct conviction?

## ANALYSIS

### I.

*Deletion of "Intentionally" from Jury Instructions*

 The trial court deleted the word "intentionally" from the standard jury instructions. *See* 10 *Minnesota Practice*, CRIM.JIG, 12.02 (1990). A trial court's

---

1. The standard jury instruction is:
 The elements of Sexual Conduct in the First Degree are:
 First, defendant *intentionally* sexually penetrated [complainant].
 * * * * * *
 10 *Minnesota Practice,* CRIM.JIG, 12.02 (1990) (emphasis added).

The trial court gave the following instruction:
 The elements of Sexual Conduct in the First Degree are:
 First, defendant sexually penetrated [complainant].
 * * * * * *

refusal to give a requested jury instruction is within its discretion, and will not be overturned absent a showing of abuse of discretion. *State v. Daniels*, 361 N.W.2d 819, 831 (Minn.1985); *State v. Saybolt*, 461 N.W.2d 729, 735 (Minn.App.1990), *pet. for rev. denied* (Minn. Dec. 17, 1990). Jury instructions are read as a whole to determine whether they were a fair and adequate explanation of the law. *Daniels*, 361 N.W.2d at 831–32; *State v. Jones*, 347 N.W.2d 796, 801 (Minn.1984).

■■■ Appellant contends the trial court's deletion of "intentionally" from the standard jury instructions on criminal sexual conduct made the offense a strict liability crime. That is not necessarily true. The legislature may make the commission of an act a crime without regard to the intent or motive of the actor. *State v. Kjeldahl*, 278 N.W.2d 58, 61 (Minn.1979). The absence of an intent element does not create a strict liability crime. It simply creates a general intent crime. The intent required for a general intent crime is the intent to do the act that constitutes a crime. *Id.*

■■■ The statute here, Minn.Stat. § 609.-342, subd. 1 (1990), does not contain an intent requirement, making it a general intent crime. *See State v. Lindahl*, 309 N.W.2d 763, 767 (Minn.1981) (first degree criminal sexual conduct involving bodily harm to the victim is a general intent crime); *see also State v. O'Brien*, 364 N.W.2d 901, 904 (Minn.App.1985) (substantive elements of first degree criminal sexual conduct under Minn.Stat. § 609.342, subd. 1(e)(i) are penetration, personal injury, and force or coercion), *aff'd as modified*, 369 N.W.2d 525 (Minn.1985).

■■■ Appellant's theory of the case was that he was too intoxicated to form the requisite intent for committing a criminal act. Appellant is entitled to a jury instruction on his theory of the case if supported by the evidence. *See Daniels*, 361 N.W.2d at 832; *State v. Ruud*, 259 N.W.2d 567, 578 (Minn.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). The trial court gave a voluntary intoxication instruction for the burglary charge, a specific intent crime. The trial court refused to give this instruction for the criminal sexual conduct charge, a general intent crime. The voluntary intoxication instruction should have been given for the sexual conduct charge also, but its omission is not reversible error. Criminal sexual conduct is not technically a specific intent crime. *Lindahl*, 309 N.W.2d 767.

The use of the standard JIG instruction with the word "intentionally" would have been preferable, but we do not find error requiring a new trial. *See Rosillo v. State*, 278 N.W.2d 747, 749 (Minn.1979).

## II.

### Lesser Included Offense

■■■ The trial court refused to give an instruction on third degree criminal sexual conduct as a lesser included offense of first degree criminal sexual conduct. Appellant contends the jury could have found him guilty of third degree criminal sexual conduct instead of first degree if they found there was no personal injury to complainant or no reasonable fear of imminent great bodily harm. Third degree criminal sexual conduct is committed where the actor uses force or coercion to accomplish sexual penetration. Minn.Stat. § 609.344, subd. 1(c) (1990). First degree occurs if there is physical injury to the victim and the actor uses force or coercion. Minn. Stat. § 609.342, subd. 1(e)(i) (1990). First degree also occurs if the victim has imminent fear of great bodily harm. Minn.Stat. § 609.342, subd. 1(c) (1990).

■■■ The trial court has discretion to determine what lesser included offenses are submitted to the jury. *Bellcourt v. State*, 390 N.W.2d 269, 273 (Minn.1986). The trial court must give the instruction on lesser included offenses if the evidence supports it. *Id.* Failure to give such an instruction must prejudice the defendant to be grounds for reversal. *Id.*

■■■ The trial court must determine whether the offense is a lesser included offense. Minn.Stat. § 609.04, subd. 1 (1990) provides:

Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following:

(1) *A lesser degree of the same crime;*
* * *.

(Emphasis added.) Therefore, third degree criminal sexual conduct is an included offense of first degree criminal sexual conduct.

■■■ The trial court must then determine whether to submit the lesser included offense to the jury. *Bellcourt*, 390 N.W.2d at 273. The test is "whether the evidence provides a rational basis for an acquittal on the offense charged and a conviction on the lesser offense." *Id.* The elements which differentiate the crimes must be sufficiently disputed so the jury may make a distinction. *Id.* The evidence must reasonably support a conviction on the lesser included offense and acquittal on the greater. *Id.* at 274.

■■■ The distinction between third degree and first degree criminal sexual conduct in this case is the presence of personal injury or reasonable fear of imminent great bodily harm for first degree. "Personal injury" is defined as "physical pain or injury, illness, or any impairment of physical condition." Minn.Stat. §§ 609.341, subd. 8, 609.02, subd. 7 (1990). Complainant testified appellant pulled her head back by her hair and pulled hair out of her head. Also, she testified the anal penetration was painful and caused bleeding. "Great bodily harm" is defined as serious injury or injury that creates high probability of death. Minn.Stat. § 609.02, subd. 8 (1990). The trial court could determine complainant had a reasonable fear of imminent great bodily harm to herself or her sons. Complainant thought she would be killed because she could identify appellant. She was also concerned for the safety of her children; she

thought one son had already been injured. Appellant injured complainant during the assault. A person could reasonably fear the violence would escalate. We find the trial court's refusal to give the third degree criminal sexual conduct instruction was within its discretion. However, the failure to give the requested lesser included contributed to a potential problem the trial court created by not giving separate verdict forms for each count of criminal sexual conduct.

### III.

*Unanimity*

Appellant contends the disjunctive ("either/or") jury instruction on first degree criminal sexual conduct violated his right to a unanimous jury verdict. Appellant was charged with two counts of first degree criminal sexual conduct under Minn. Stat. § 609.342, subds. 1(c), (e)(i). Minn. Stat. § 609.342, subd. 1 (1990) provides in part:

Subdivision 1. Crime defined. A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the first degree if any of the following circumstances exists:

\* \* \* \* \* \*

(c) circumstances existing at the time of the act cause the complainant to have a reasonable fear of imminent great bodily harm to the complainant or another;

\* \* \* \* \* \*

(e) the actor causes personal injury to the complainant, and * * *

(i) the actor uses force or coercion to accomplish sexual penetration * * *.

The trial court did not give separate jury instructions for each count. The elements were listed and where the clauses differed, the trial court gave the element in the disjunctive.[2] Only one jury verdict form

2. The trial court's instructions were:
 The elements of Sexual Conduct in the First Degree are:
 First, defendant sexually penetrated [complainant].

1. Sexual intercourse constitutes sexual penetration if there is any intrusion of the penis into the female genital opening, however slight.
2. Fellatio constitutes sexual penetration if there is any contact between the penis of one

was submitted to the jury for the criminal sexual conduct charge. In essence, the jury was instructed that it could find appellant guilty of first degree criminal sexual conduct if it found that complainant either received a personal injury *or* had fear of harm. The jury was not instructed to indicate which subdivision (or both) that it found all the elements had been proven.

The trial court did give the jury the general instruction on the requirement of a unanimous verdict. But the verdict form as submitted to the jury and as returned to the court did not indicate whether the jury found appellant guilty of criminal sexual conduct because it found all the elements plus a personal injury on the part of complainant or because it found all the elements plus submission by complainant due to a fear of harm. As appellant correctly notes, it is possible the jury was not unanimous that complainant received a personal injury. It could have been those who did not find personal injury felt she had submitted out of a reasonable fear of harm, and it is possible that those who found no fear of harm found personal injury, and thus there was unanimity that all the ele-

ments of first degree sexual conduct were found on the "combined" counts.

Had some of the jury been reluctant to find personal injury and some of the jury reluctant to find submission due to a fear of harm, it is possible, had the lesser included of third degree sexual conduct been before them, they might have been unanimous that third degree was the one charge all twelve could agree on. This is conjecture, but necessary conjecture because the trial court's instructions did not require the jury to be unanimous on which of the two counts it submitted.

▉ Appellant did not object to the jury instructions on this ground at trial and did not mention this issue in his motion for a new trial. Generally, failure to object at trial to the given jury instructions forfeits the right to appeal on that error. *State v. Malaski*, 330 N.W.2d 447, 451 (Minn.1983). However, if the error is "fundamental law" or "plain error affecting substantial rights," it may be considered on appeal. *Id.;* Minn.R.Evid. 103(d). *See State v. Begbie*, 415 N.W.2d 103 (Minn.App.1987) (failure to object at trial or to move for a new

person, and the mouth, tongue or lips, of another person, however slight.
3. Anal intercourse constitutes sexual penetration if there is any intrusion of the penis of one person into the anal opening of another person, however slight.
Emission of semen is not necessary to accomplish sexual penetration.
Second, the sexual penetration occurred without the consent of [complainant]. Consent means a voluntary act with that person at the time the act takes place.
Third, at the time of defendant's act:
(1) [Complainant] had a reasonable fear of imminent great bodily harm to herself or her children, and defendant accomplished the act because [complainant] had such fear of imminent great bodily harm. "Great bodily harm" means bodily harm which create a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the functions of any bodily member or organ or other serious bodily harm. To fear great bodily harm means that the person must fear that such harm will occur immediately.
OR
(2) the defendant caused personal injury to [complainant], and she submitted as a result of the defendant using force or coercion to accomplish the act. Personal injury means physical

pain or injury or any impairment of physical condition. The term force means intentionally inflicting, attempting to inflict or threatening to inflict bodily harm upon another or intentionally causing fear in another of immediately bodily harm. Force also includes committing any crime against another, or threatening to commit a crime; if the other was reasonably caused to believe that the person making the threat had the present ability to execute the threat, and the other was caused to submit thereby. Bodily harm means physical pain or injury, illness, or any impairment of physical condition.
The term coercion means words or circumstances that cause a person to reasonably fear that the person making the threat will inflict bodily harm upon, or hold in confinement, the person threatened or another or force the person to submit to sexual penetration. Proof of coercion does not require proof of a specific act or threat.
Fourth, the defendant's act took place on or about September 1, 1990, in Beltrami County. If you find that each of these four elements has been proved beyond a reasonable doubt, defendant is guilty of Criminal Sexual Conduct in the First Degree. If you find that any of these elements has not been so proved, defendant is not guilty of Criminal Sexual Conduct in the First Degree.

trial waived right to raise issue of jury unanimity on appeal but court considered the issue in the interests of justice), *pet. for rev. denied* (Minn. Jan. 20, 1988). We choose to review the issue on the merits. *See* Minn.R.Civ.App.P. 103.04.

In Minnesota, unanimous jury verdicts are required for criminal cases. Minn. R.Crim.P. 26.01, subd. 1(5). We have found the absence of a jury finding on which person was the victim of terroristic threats did not violate defendant's right to a unanimous jury verdict. *Begbie*, 415 N.W.2d at 105–06 (citing *Holland v. State*, 91 Wis.2d 134, 143, 280 N.W.2d 288, 292 (1979), *cert. denied*, 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980)); *see also State v. Baldwin*, 101 Wis.2d 441, 304 N.W.2d 742 (1981) (disjunctive jury instruction on a charge of second degree assault regarding the use *or* threat of force or violence did not violate the defendant's right to a unanimous verdict). However, in *Begbie* the identity of the victim was not an element of the crime charged. *Begbie*, 415 N.W.2d at 106.

Appellant relies on *United States v. Gipson*, 553 F.2d 453 (5th Cir.1977) where the court found a disjunctive jury instruction violated the right to a unanimous verdict. The court found acts within a conceptual grouping which were sufficiently analogous could permit a jury verdict to be deemed unanimous even if the jurors did not agree which act was committed. *Id.* at 458. However, between different groupings, the jurors may not be in substantial agreement of what act the defendant committed. *Id.*

The United States Supreme Court recently qualified the approach taken by *Gipson*. In *Schad v. Arizona*, —— U.S. ——, ——, 111 S.Ct. 2491, 2499, 115 L.Ed.2d 555 (1991), the Court found the conceptual groupings test "too conclusory to serve as a real test." The *Schad* court held that the submission of first degree murder to a jury as premeditated or felony murder, without requiring agreement on which theory, was not unconstitutional. *Id.* at ——, 111 S.Ct. at 2504.

██ On the relatively undisputed facts leading to the charge, we do not find that the "either/or" instruction allowing the jury to consider personal injury or submission due to a threat of bodily harm, but not requiring the jury to specify which, mandates a second trial. However, in the future, "either/or" jury instructions should be avoided. If the state feels it has the evidence to charge a defendant with a specific count, the jury should be instructed as to all the essential elements on that count and a separate verdict form for that count should be submitted.

██ The trial court did give an instruction requiring unanimity, and *Schad* does not dictate, as a constitutional element, that jurors always have to agree on the alternative ways a crime can be committed.

## IV.

### Sentencing

██ The trial court sentenced appellant to 244 months for the first degree criminal sexual conduct conviction, representing a double upward durational departure for a person with his criminal history score. Substantial and compelling aggravating circumstances must be present to justify an upward departure. *State v. Garcia*, 302 N.W.2d 643 (Minn.1981). The trial court listed the following as reasons for the departure, 1) particular vulnerability of the victim since the assault occurred in her home at night while her small children were home, 2) violation of the victim's zone of privacy, and 3) particular cruelty of multiple penetrations and multiple types of penetrations in the manner described at trial. Upon review, the record must be examined to determine if the reasons given by the trial court justify the departure. *Williams v. State*, 361 N.W.2d 840, 844 (Minn.1985).

██ Appellant's criminal history includes convictions for unauthorized use of a motor vehicle and theft, and an increase because the offense took place while he was on probation. Appellant challenges the departure as being excessive considering his criminal history involves relatively

minor crimes. However, prior crimes are not considered as mitigating factors that can somehow offset aggravating factors. Criminal history merely determines points for placement on the presumptive sentencing guidelines grid. They are not in and of themselves either mitigating or aggravating factors.

■■■ Invasion of a victim's zone of privacy, the home and curtilage, is an aggravating factor to consider for an upward durational departure. *See State v. Coe*, 411 N.W.2d 180 (Minn.1987) (burglary at 3:00 a.m. while victim more vulnerable to sexual assault was an aggravating factor); *State v. Winchell*, 363 N.W.2d 747, 750 (Minn.1985) (robbery taking place in victim's home was aggravating factor); *State v. Morales*, 324 N.W.2d 374, 377 (Minn. 1982) (sexual assault in victim's backyard violated victim's zone of privacy and was an aggravating factor). The assault took place in complainant's zone of privacy. She and her sons were asleep at approximately 3:00 a.m. when appellant entered their home.

■■■ Appellant downplayed the impact of the children's presence since they were sleeping, did not awaken, and the assault took place outside of their bedrooms. However, a crime does not have to take place in front of a child for this to be an aggravating factor. The presence of a child in another room is analogous to a reduced physical capacity. *State v. Dalsen*, 444 N.W.2d 582, 584 (Minn.App.1989), *pet. for rev. denied* (Minn. Oct. 13, 1989). In *Dalsen*, the court noted the victim of a sexual assault could not try to flee because the victim's child would be left with the assailant, and the assailant knew of the child's presence. *Id.* This case is similar. Complainant confronted appellant in her son's bedroom and she did not know if he was hurt. During the assault, she was afraid to scream or struggle because her sons might awaken and be injured. She was afraid of leaving appellant alone in the home with the children. Therefore, the presence of children in the home was properly considered as an aggravating factor.

■■■ Appellant also contends the multiple penetrations and personal injury involved were typical of first degree criminal sexual conduct. The trial court did not list personal injury as an aggravating factor. The court did discuss the particular cruelty of the multiple penetrations and the manner in which the assault took place. *See* Minn.Sent. Guidelines II.D.2.b(2); *State v. Heinkel*, 322 N.W.2d 322 (Minn. 1982) (particular cruelty of sexual assault justified double departure). Multiple types of penetrations may also be considered as aggravating factors. *Dalsen*, 444 N.W.2d at 583–84. Complainant was subjected to oral penetration following an anal penetration that caused bleeding. The trial court was within its discretion in finding particular cruelty present in this case.

■■■ The record supports the reasons given by the trial court in departing from the presumptive sentence. The trial court was within its discretion in giving a double upward durational departure.

## DECISION

The trial court's deletion of the word "intentionally" from the CRIM.JIG instruction on the first degree criminal sexual conduct was not reversible error.

The trial court's refusal to give third degree criminal sexual conduct as a lesser included offense was within its discretion.

Separate jury instructions and separate verdict forms for each of the two counts of first degree criminal sexual conduct would have been preferable but the disjunctive ("either/or") instruction does not mandate a new trial.

Presence of aggravating factors justified double upward durational departure in sentencing.

Affirmed.