**STATE of Minnesota, Respondent,**

v.

**Mark Arthur IHLE, Petitioner, Appellant.**

**No. C5–00–1262.**

Supreme Court of Minnesota.

March 28, 2002.

Michael A. Hatch, No. 42158, Attorney General, Timothy Kuntz, No. 58993, South St. Paul City Attorney, Ann C. O'Reilly, No. 269815, Asst. South St. Paul City Attorney, LeVander, Gillen & Miller, P.A., South St. Paul, Respondent's Attorneys'.

Michael F. Crommett, No. 19896, Assistant State Public Defender, Minneapolis, Appellant's Attorney.

## OPINION

ANDERSON, RUSSELL A., Justice.

Appellant Mark Arthur Ihle was arrested after an altercation with two police officers at his home in South St. Paul. He was convicted and sentenced for obstructing legal process with force or violence, a gross misdemeanor.[1] On appeal he argues that his conviction must be reversed and a new trial granted because (1) the district court failed to instruct the jury that the obstruction statute prohibits only words or acts that physically obstruct an officer, in accordance with our decision in *State v. Krawsky*, 426 N.W.2d 875 (Minn.1988), and (2) because the district court did not require all jurors to agree upon which of appellant's acts satisfied the elements of the offense. The court of appeals affirmed appellant's conviction and we do likewise.

On November 24, 1999, at approximately 9:50 p.m., South St. Paul police officer Leah Reyes was driving to work in her personal vehicle, dressed in full uniform. Reyes observed a minivan swerving and crossing over the center line of the highway. Suspecting the driver was intoxicated, she radioed for backup and followed the vehicle off the highway and through South St. Paul. Once the van stopped in front of a house, Reyes recognized the driver, Mary Anderson, from a previous

---

1. The jury also found appellant guilty of disorderly conduct, a misdemeanor, but at sentencing the district court dismissed that offense, presumably on the basis of Minn.Stat. § 609.035 (2000) (providing that where person's conduct constitutes more than one offense, person may be punished for only one of the offenses).

encounter. Reyes got out of her truck, approached Anderson and asked if she had been drinking. Anderson explained she was very tired from driving to Kansas City and back again that day. Anderson agreed to take a breathalyzer test, which showed that she had no alcohol in her system. Police officer Lawrence Snaza arrived as backup in a squad car. He ran a check on Anderson's driver's license and discovered that it was suspended. Snaza told Reyes that the license was suspended and returned to his squad car to write a citation.

From here, the testimony presented by each party differs significantly. According to Officers Reyes and Snaza, as Reyes explained to Anderson that she was being cited for driving after suspension, appellant, Anderson's fiancé, stormed out of his house, shouting "Why don't you quit f_____ing harassing Mary." Reyes described appellant's demeanor as "boisterous" and "totally irrational" and Snaza described appellant as "very belligerent, hostile, yelling, shouting" and "very irrational." Reyes told him to calm down and leave, but appellant did not do so.

According to Reyes and Snaza, appellant swung his arms, raised his hands and pointed his finger at Reyes. He told her "Why don't you come over later and I'll take care of you. Let me get you over here when you're not working." Reyes interpreted the statement as a "major" threat of assault. When Reyes asked appellant for his name he said, "None of your f_____ing business, bitch." Appellant came closer to Reyes and stuck his finger within inches of her face. Reyes put her open palm on his chest and pushed him back with a straight arm. Reyes testified "After I pushed him backwards, he came back towards me in a fighting stance like he was ready to punch me. At this time, you know, I—I said: 'Back off, or stop,

you're under arrest.' I was going to arrest him, and I knew that now, for obstructing legal process * * *. The legal process was our traffic stop * * *."

Snaza watched the scene from his car, and when he felt the situation become dangerous he radioed for backup and jumped out of the car. Appellant saw Snaza and ran into his house, and the two officers chased him up the steps. Appellant tried to close the door, but before it closed Snaza pushed it open with his shoulder. Inside the house appellant continued to swing at Snaza. The officers wrestled appellant to the floor, where he flailed about kicking and hitting. They told appellant he was under arrest and to calm down. Appellant continued to scream, kick and swear at the officers as they handcuffed him, put him in the squad car, and brought him to the county jail.

The testimony of defense witnesses differed from the state's evidence in many instances. According to appellant, Anderson, and their two 11–year–old sons, appellant walked out of the house, watched the breathalyzer test, and asked Reyes why they were detaining Anderson. Anderson and appellant testified that Reyes ignored appellant's questions, and then got very close to appellant and told him to return to the house. Appellant told Reyes he had a right to be there. Reyes swore at him, continued "badgering" him, hit his forehead with her palm, and repeatedly poked him in the chest, telling him she would impound his car if he didn't get back inside. Appellant described Reyes' behavior as "typical provocative police arrogance" that was designed to elicit a violent response from him. Appellant neither acted menacing nor raised his hands to Reyes, and never threatened to assault her later. The officers never told appellant on the street that he was under arrest, and appellant ran because he was

afraid of the police assaulting him. Appellant ran into the house, locked the door, and was struck by it when Snaza broke it down. The officers pinned him against the couch in front of his children. Reyes threatened to mace appellant while trying to handcuff him.

Appellant was charged with obstruction of legal process with force or violence, a gross misdemeanor, in violation of Minn. Stat. § 609.50, subd. 2(2) (2000); and disorderly conduct, a misdemeanor, in violation of Minn.Stat. § 609.72, subd. 1 (2000).

At the close of trial, the court read CRIMJIG 24.25 and 24.26 [2] virtually verbatim. As to the first two elements of the charge of obstructing legal process the district court instructed the jury in the alternative as follows:

> First, Leah Reyes and/or Lawrence Snaza were attempting to lawfully execute legal process. The service of a citation on a party and/or the arrest of a party is the execution of legal process.

> Second, the defendant obstructed, hindered or prevented the execution of legal process or the taking of defendant into custody.

> Or first, Leah Reyes and/or Lawrence Snaza were attempting to take defendant into custody on a criminal charge.

> And, second, the defendant obstructed, hindered or prevented the taking of defendant into custody.

> Or first, Leah Reyes and/or Lawrence Snaza were peace officers engaged in the performance of official duties. A licensed police officer is a peace officer.

> Second, the defendant obstructed, resisted or interfered with the officers in the performance of official duties.

See 10A *Minnesota Practice*, CRIMJIG 24.25, 24.26. The district court then instructed that the third element required that appellant acted with intent and the fourth element required that the offense occurred on November 24, 1999 in Dakota County. The jury was then told that if each of the elements had been proven beyond a reasonable doubt, the jury was to answer this question: "Was the defendant's act accompanied by force or violence or a threat of force or violence?" The district court then told the jury to answer this question yes or no and if the jury had a reasonable doubt as to the answer, they were to answer the question no.

The district court's instruction regarding the charge of disorderly conduct was read virtually verbatim from CRIMJIG 13.120 and 13.121 and included this explanation of "fighting words":

> If you find that the defendant's conduct consisted only of offensive, obscene or abusive language, you must also find that the words used were fighting words. Fighting words are words that constitute personally offensive epithets that, when spoken to the ordinary person, under the particular circumstances of the case, are as a matter of common knowledge inherently likely to provoke a violent reaction or incite an immediate breach of the peace by whom such words are addressed. The offense may be based upon the utterance of fighting words alone without resulting in actual violence. The focus is upon the nature of the words and the circumstances in which they were spoken, rather than upon the actual response.

See 10 Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides*,

---

**2.** See 10A Minn. Dist. Judges Ass'n, *Minnesota Practice–Jury Instruction Guides, Criminal,* CRIMJIG 24.25, 24.26 (4th ed.1999).

*Criminal,* CRIMJIG 13.120, 13.121 (4th ed.1999).

Neither the state nor appellant objected to the instructions at the time they were given. The jury found appellant guilty of misdemeanor disorderly conduct and—by answering "yes" to the special verdict question—gross misdemeanor obstruction of legal process. At sentencing the district court entered a conviction only for the offense of gross misdemeanor obstructing legal process with force or violence and stayed imposition of sentence, placing appellant on probation.

On appeal, appellant argued that his conviction was the product of plain error that affected his substantial rights because the jury instructions for obstruction failed to adequately distinguish between legal behavior and illegal behavior. Specifically, appellant argued that in light of *Krawsky,* 426 N.W.2d at 877, where we held that section 609.50 prohibits only acts and words that have the effect of physically obstructing legal process, the instruction in his case was inadequate and misleading. Appellant also argued that the jury was not required to unanimously agree on the act he committed that constituted obstruction of legal process. The court of appeals affirmed his conviction, holding that appellant's actions represent the type of behavior the statute is meant to penalize, and that unanimity is not required with respect to the alternative ways that a crime can be committed.

## I.

The obstructing legal process statute provides in relevant part:

Whoever intentionally does any of the following may be sentenced as provided in subdivision 2:(1) obstructs, hinders,

or prevents the lawful execution of any legal process, civil or criminal, or apprehension of another on a charge or conviction of a criminal offense; (2) obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties; * * *.

Minn.Stat. § 609.50, subd. 1(1), (2) (2000).[3] In *State v. Krawsky,* Krawsky argued the obstruction statute was unconstitutionally overbroad and vague. 426 N.W.2d at 876. Without making an explicit holding on its constitutionality, we construed the statute narrowly, holding that the statute required the state to prove that the defendant acted intentionally and that the statute was directed at words and acts that have the effect of physically obstructing or interfering with a police officer. *Id.* at 877. "The statute forbids intentional physical obstruction or interference with a police officer in the performance of his official duties." *Id.* In distinguishing physical obstruction from mere interruption, we defined physically obstructing or interfering as "substantially frustrating or hindering the officer in the performance of his duties." *Id.* We described the type of verbal conduct the statute prohibits:

The statute may be used to punish "fighting words" or any other words that by themselves have the effect of physically obstructing or interfering with a police officer in the performance of his duties—e.g., the statute may be used to punish a person who runs beside an officer pursuing a felon in a public street shouting and cursing at the officer if the shouting and cursing physically obstructs the officer's pursuit and if the

---

**3.** In 1989 the legislature amended Minn. Stat § 609.50 without altering the substance of the language pertinent to this case. *See* Act of March 9, 1989, ch. 5, § 4, 1989 Minn. Laws 17, 18–19.

person intends by his conduct to obstruct or interfere with the officer.

*Id.*

In *State v. Tomlin,* 622 N.W.2d 546, 549 (Minn.2001), we applied the holding of *Krawsky* and concluded that Tomlin's lies to the police did not constitute obstruction of legal process, because his lies and omissions did not physically obstruct the officers during their investigation. *Id.* at 549. We concluded that Tomlin's lies did not rise to the level of "fighting words." [4] *Id.*

■ District courts are allowed considerable latitude in the selection of language for jury instructions. *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn.1986). Jury instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). An instruction is in error if it materially misstates the law. *See State v. Pendleton,* 567 N.W.2d 265, 268 (Minn. 1997). Furthermore, it is well settled that the court's instructions must define the crime charged and the court should explain the elements of the offense rather than simply read statutes. *See Rosillo v. State,* 278 N.W.2d 747, 749 (Minn.1979).

■ Appellant did not object to the instructions at trial, therefore we may only reverse if the instructions were misleading or confusing on fundamental points of law. *See State v. Butler,* 295 N.W.2d 658, 659 (Minn.1980). Under Minn. R.Crim. P. 31.02, we may consider a plain error not previously brought to the attention of the district court if the error affects substantial rights. To establish plain error, an appellant must show that a district court's

ruling (1) was error, (2) that the error was plain, and (3) that the error affected appellant's substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998). If these three prongs are satisfied, we assess whether to remedy the error to ensure fairness and the integrity of the judicial proceedings. *Id.*

■ Appellant first argues that the instruction given here failed to incorporate the holding of *Krawsky* and thus did not advise the jury that the statute prohibits only intentional physical acts or fighting or other words that have the effect of physically obstructing or interfering with a police officer in the performance of her duties. Without such an instruction, appellant asserts, the jury may have convicted him for conduct not prohibited by the statute.

The state responds that the conviction is proper because the jury, by its answer to the special verdict question, concluded that appellant used force or violence or the threat thereof in commission of the offense, and appellant's acts are therefore prohibited by section 609.50 as limited by our holding in *Krawsky.* Furthermore, the jury unanimously found that appellant was guilty of disorderly conduct, after being instructed that in order to be convicted of that charge, appellant must have disturbed the peace with physical acts or fighting words.

The first prong of *Griller* 's plain error test requires that we determine whether the instructions were in error. 583 N.W.2d at 740. When considered without the special verdict question, the instruction

---

4. While we characterized the "fighting words" discussion in *Krawsky* as dicta in *Tomlin,* 622 N.W.2d at 549, that characterization was not essential to our ruling in *Tomlin.* Under these facts, we reaffirm that if the obstruction amounts to verbal conduct, juries

must be instructed that obstructing legal process requires that the words have the effect of physically obstructing or interfering with a police officer in the performance of her duties. *See Krawsky,* 426 N.W.2d at 877.

given here recited the elements of the obstruction statute but failed to reflect the narrow construction of that statute, as articulated in *Krawsky*. As the instruction materially misstated the law, the first prong of the plain error test is satisfied.

■ The second prong of *Griller* requires that the error was plain. 583 N.W.2d at 740–41. To satisfy the second prong "it is sufficient that the error is plain at the time of the appeal." *Id.* at 741. "For purposes of plain error rule, 'plain' is synonymous with 'clear' or, equivalently, 'obvious.'" *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (citations omitted). We conclude that the error of instructing a jury on the elements of obstructing legal process without including the parameters established 13 years ago in *Krawsky* renders the error clear and obvious.

■ *Griller*'s third prong requires that the error affected defendant's substantial rights. 583 N.W.2d at 741. This prong is satisfied if the error was prejudicial and affected the outcome of the case. *Id.* Plain error is prejudicial if there is a "reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." *State v. Glidden,* 455 N.W.2d 744, 747 (Minn.1990).

■ We conclude there is no reasonable likelihood that a more accurate instruction would have changed the outcome in this case. In order to find appellant guilty of gross misdemeanor obstruction of legal process, the jury was required—by

their answer to the special verdict question—to find that appellant's act was accompanied by force or violence or a threat of force or violence. The jury also found appellant guilty of disorderly conduct after being instructed that if appellant's conduct consisted only of offensive, obscene or abusive language, the words used must have been fighting words. In light of the evidence presented and all of the jury instructions given, we hold that the district court erred when it failed to instruct the jury on the elements of obstruction of legal process in accordance with our decision in *Krawsky,* decided in 1988;[5] however appellant, who made no objection at trial to the erroneous instruction, is not entitled to a new trial because it is not reasonably likely that the error had a significant effect on the verdict in view of the jury's answer to the special verdict question.

## II.

Appellant's second argument is that the district court erred because it did not instruct the jurors that they must unanimously agree on the specific conduct appellant committed that constituted obstruction of legal process. He argues that because the court gave the jury three alternative possibilities to satisfy the first and second elements of the obstruction charge—the officers were (1) executing legal process by serving a citation or making an arrest, (2) taking appellant into custody, or (3) performing official duties—the court did not require unanimity on the facts the state had to prove in order to return a verdict of guilty.[6] Further, he contends that the

---

5. We recommend that the Minnesota District Judges Association Committee on Criminal Jury Instruction Guides review CRIMJIG 24.26 in light of our narrow interpretation of the obstruction statute in *Krawsky* and our continued adherence to *Krawsky* since 1988.

6. The instructions in this case, allowing the jury to decide whether appellant obstructed the officers in three alternate ways, is by no means a model of clarity, and illustrates well the basis for the court of appeals' attempt to discourage disjunctive "either/or" instructions. *See State v. Day,* 501 N.W.2d 649, 653

instructions should have required the jury to agree on which of the appellant's actions (the scene at the car, running away, or resisting in the house) constituted such obstruction. Thus he argues that the jury was not instructed that the state had to prove every fact necessary to constitute the crime with which he was charged. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Because appellant did not object to the instructions at trial, we also review this issue for plain error. *See Griller*, 583 N.W.2d at 740.

In *Schad v. Arizona*, the United States Supreme Court addressed whether jury unanimity is required as to the facts underlying an element of a crime charged, and a plurality of the court noted the following:

> [W]e have never suggested that in returning general verdicts in [cases where alternative theories are presented] jurors should be required to agree upon a single means of commission * * *. In these cases, as in litigation generally, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line." Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.

501 U.S. 624, 631–32, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (quoting) *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (Black-

mun, J., concurring).[7] Concurring, Justice Scalia noted that due process prevents a state from grouping inherently different types of conduct in the definition of a single criminal offense. *Schad*, 501 U.S. at 649. (Scalia, J., concurring in part and concurring in the verdict).

In *Richardson v. United States*, 526 U.S. 813, 817–18, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), the Court elaborated upon the *Schad* analysis, holding that if the statute establishes alternative means for satisfying an element, unanimity on the means is not required. That is, a jury cannot convict unless it unanimously finds that the government has proved each element of the offense; however the jury need not always decide unanimously which of several possible means the defendant used to commit the offense in order to conclude that an element has been proved beyond a reasonable doubt. *Id.* at 817–18, 119 S.Ct. 1707. The Court in *Richardson* held that the constitution limits the legislature's power to define crimes so broadly that juries could convict while disagreeing about the means of committing the crime, "at least where that definition risks serious unfairness and lacks support in history or tradition." *Id.* at 820, 119 S.Ct. 1707 (citations omitted). We applied the reasoning of *Schad* and *Richardson* recently in *State v. Crowsbreast*, 629 N.W.2d 433, 438 (Minn.2001) (holding that jurors are not required to unanimously agree on which

---

(Minn.App.1993); *State v. Hart*, 477 N.W.2d 732, 739 (Minn.App.1991), *rev. denied* (Minn. Jan. 16, 1992). We agree that such instructions can be confusing for jurors. While courts are constrained in the effort to avoid such instructions by the legislature's definition of the offense, there may be due process limits on "umbrella" crimes that encompass widely divergent conduct. *Schad v. Arizona*, 501 U.S. 624, 650, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (Scalia, J., concurring).

7. *Schad* was decided by a four-member plurality, with Justice Scalia concurring in the judgment. Justice Scalia agreed that when a single crime can be committed in various ways, jurors need not agree on a single mode of commission. *Schad v. Arizona*, 501 U.S. 624, 649, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (Scalia, J., concurring in part and concurring in the verdict).

acts comprised the past pattern of domestic abuse).

 Section 609.50 prohibits intentional conduct that physically obstructs or interferes with a police officer in the performance of official duties. *See Krawsky,* 426 N.W.2d at 877. According to the statute, a person commits obstruction if he "obstructs," "hinders," "prevents," "resists," or "interferes." *See* Minn.Stat. § 609.50, subd. 1(1), (2). These behaviors are not inherently different types of conduct grouped under a single offense, and in this case they were committed as part of a single behavioral incident. Likewise, the various contexts delineated in the statute in which the defendant's conduct arises, "execution of legal process," "apprehension," and the "performance of official duties," are not so dissimilar under these facts as to result in fundamental unfairness to the defendant charged with obstructing those processes. In this case the facts were undisputed that the officers were at the residence to make a traffic stop, cited Anderson for driving after suspension, and then attempted to arrest appellant. The close similarity of the conduct described by the statute, coupled with the undisputed facts regarding the purpose for the officer's presence in this case, leads us to conclude there is no risk of unfairness in not requiring unanimity. *See Richardson,* 526 U.S. at 820, 119 S.Ct. 1707. As such, appellant has established no due process violation as to jury unanimity.

Because the jury instructions were not defective regarding the requirement for a unanimous jury, the district court did not err and we need not determine whether the error was plain or whether it affected substantial rights.

Affirmed.

PAUL H. ANDERSON, J., took no part in the consideration or decision of this case.