LARKIN, Judge
Appellant challenges his conviction of first-degree aggravated robbery, arguing that the district court's jury instructions regarding that offense violated his right to a unanimous verdict. We affirm.
FACTS
Respondent State of Minnesota charged appellant Adam Ryan Lagred with first-degree aggravated robbery under Minn. Stat. § 609.245, subd. 1, second-degree assault under Minn. Stat. § 609.222, subd. 1 (2016), and threats of violence under Minn. Stat. § 609.713, subd. 1 (2016). The case was tried to a jury.
The evidence at trial showed that Lagred and the victim, J.H., are acquaintances *347 and had known each other for over a decade. In 2013, Lagred and his then-girlfriend stayed at J.H.'s house for one or two weeks. J.H. allowed Lagred's girlfriend and her children, but not Lagred, to stay at his house again in 2014, which angered Lagred. In November 2014, J.H. confronted Lagred concerning Lagred's treatment of his girlfriend and his refusal to return property to her.
On May 15, 2017, J.H. visited an apartment complex to see a friend, unaware that Lagred lived in the same complex. As J.H. was walking to his car in the parking lot, he heard someone say, "Come here you son of a b-tch." J.H. turned and saw Lagred approaching him with a baseball bat. Lagred was out of control and screaming. J.H. held up his hands and attempted to calm Lagred. Lagred yelled at J.H., swung the bat at him twice, and then hit him on the head with the bat. Next, Lagred demanded that J.H. empty his pockets. J.H. had a small pocket knife, which Lagred took. J.H. allowed Lagred to take the knife because he was afraid of being hit with the bat again.
S.D., one of Lagred's neighbors, was walking through a nearby parking lot and observed the altercation between J.H. and Lagred. S.D. testified that Lagred was holding a baseball bat and that Lagred and J.H. seemed to be arguing. S.D. stood between J.H. and Lagred, and tried to calm Lagred. Lagred was yelling and swinging the bat in the air. S.D. did not see Lagred hit J.H. with the bat, but he saw Lagred take J.H.'s pocket knife.
M.P., another one of Lagred's neighbors, observed the incident from her living room window. M.P. testified that Lagred was "behaving rather erratically" and approached J.H. in "a confrontational manner." M.P. saw Lagred hit J.H. with the baseball bat, but she did not see J.H. remove anything from his pockets or give anything to Lagred.
After the incident, J.H. drove to a police station and reported the incident to a police officer. The police photographed a bump on J.H.'s head, which had been caused by the blow from the bat. J.H. spoke with his mother, a registered emergency medical technician, about his injury, but he did not seek other medical attention. J.H. suffered from headaches and light-sensitivity for a month after the incident.
The district court instructed the jury that it could find Lagred guilty of first-degree aggravated robbery either because he was armed with a dangerous weapon, or because he inflicted bodily harm upon J.H., while committing a robbery. Lagred did not object to the instruction or propose an alternative instruction. Consistent with the district court's instruction, the prosecutor argued, in closing, that although the jury was required to reach a unanimous verdict on the elements of aggravated robbery, it did not need to unanimously decide whether Lagred was armed with a dangerous weapon or inflicted bodily harm while committing the alleged robbery.
The jury found Lagred guilty as charged. The district court entered judgment of conviction on the aggravated-robbery charge, granted Lagred's motion for a downward dispositional departure, and stayed execution of a 68-month prison term. Lagred appeals.
ISSUE
Did the district court's jury instructions regarding first-degree aggravated robbery violate Lagred's right to a unanimous verdict?
ANALYSIS
District courts are entitled to considerable latitude when selecting language *348 for jury instructions, but the jury instructions cannot materially misstate the law. State v. Carridine , 812 N.W.2d 130, 144 (Minn. 2012). Appellate courts review jury instructions as a whole to determine whether the instructions accurately stated the law in a manner that could be understood by the jury. State v. Kelley , 855 N.W.2d 269, 274 (Minn. 2014).
Normally, an appellate court reviews a district court's jury instructions for an abuse of discretion. State v. Huber , 877 N.W.2d 519, 522 (Minn. 2016). But if a defendant failed to object to the jury instructions at trial, as is the case here, an appellate court reviews the instructions for plain error. State v. Milton , 821 N.W.2d 789, 805 (Minn. 2012). "Under the plain-error doctrine, the appellant must show that there was (1) an error; (2) that is plain; and (3) the error affected substantial rights." Huber , 877 N.W.2d at 522. If the first three parts of the plain-error doctrine are satisfied, the reviewing court corrects the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation omitted). If the reviewing court concludes that any part of the plain-error test is not satisfied, the court need not consider the other parts. State v. Brown , 815 N.W.2d 609, 620 (Minn. 2012).
Lagred was convicted of first-degree aggravated robbery under Minn. Stat. § 609.245, subd. 1, which provides, "Whoever, while committing a robbery, is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or inflicts bodily harm upon another, is guilty of aggravated robbery in the first degree ...." A robbery occurs if a person,
having knowledge of not being entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property.
Minn. Stat. § 609.24 (2016).
The district court instructed the jury as follows:
The elements of Aggravated Robbery in the First Degree are: First, [Lagred] took a small pocket knife from the person of [J.H.]. Second, [Lagred] knew that he was not entitled to take it. Third, [Lagred] used force to compel acquiescence in the taking or carrying off of the pocket knife. Fourth, [Lagred] was armed with a dangerous weapon or inflicted bodily harm upon [J.H.] .... Fifth, [Lagred's] act took place on or about May 15, 2017, in Renville County. If you find that each of these elements has been proven beyond a reasonable doubt, [Lagred] is guilty.
(Emphasis added.)
Lagred contends that "[t]he district court's instruction to the jury that [it] could convict [him] of aggravated robbery by finding that he was armed with a dangerous weapon or that he inflicted bodily harm denied him the right to a unanimous verdict."
Jury verdicts must be unanimous in criminal cases. Minn. R. Crim. P. 26.01, subd. 1(5). The jury must "unanimously find[ ] that the government has proved each element of the offense." State v. Ihle , 640 N.W.2d 910, 918 (Minn. 2002) (citing Richardson v. United States , 526 U.S. 813, 817-18, 119 S.Ct. 1707, 1710, 143 L.Ed.2d 985 (1999) ). "[H]owever, the jury need not always decide unanimously which of several possible means [a] defendant used to commit [an] offense in order to conclude *349 that an element has been proved beyond a reasonable doubt." Id. at 918.
For example, in Schad v. Arizona , the defendant argued that he was denied due process because the trial court's jury instructions on first-degree murder did not require the jury to agree on one of the state's alternative theories of premeditated or felony murder. 501 U.S. 624, 627, 632, 111 S.Ct. 2491, 2494-95, 2497, 115 L.Ed.2d 555 (1991) (plurality opinion). A plurality of the Supreme Court rejected this argument, explaining:
We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.
Id. at 631-32, 111 S. Ct. at 2497 (quotation omitted).
The Schad plurality further explained:
The dissent would ... adopt[ ] an inflexible rule of maximum verdict specificity. In the dissent's view, whenever a statute lists alternative means of committing a crime, "the jury [must] indicate on which of the alternatives it has based the defendant's guilt," even where there is no indication that the statute seeks to create separate crimes. This approach rests on the erroneous assumption that any statutory alternatives are ipso facto independent elements defining independent crimes under state law, and therefore subject to the axiomatic principle that the prosecution must prove independently every element of the crime. In point of fact, ... legislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes. The question whether statutory alternatives constitute independent elements of the offense therefore does not, as the dissent would have it, call for a mere tautology; rather, it is a substantial question of statutory construction.
Id. at 635-36, 111 S. Ct. at 2499 (second emphasis added) (alteration in original) (footnote and citations omitted); see also Richardson , 526 U.S. at 817-18, 119 S.Ct. at 1710 (using statutory interpretation to determine whether a statute's phrase "series of violations" set forth one element or several, regarding which a jury must unanimously agree).
But the Schad plurality noted that due process may limit a legislature's "capacity to define different courses of conduct, or states of mind, as merely alternative means of committing a single offense." 501 U.S. at 632, 111 S.Ct. at 2497.
[N]othing in our history suggests that the Due Process Clause would permit a State to convict anyone under a charge of "Crime" so generic that any combination of jury findings of embezzlement, reckless driving, murder, burglary, tax evasion, or littering, for example, would suffice for conviction.
To say, however, that there are limits on a State's authority to decide what facts are indispensable to proof of a given offense is simply to raise the problem of describing the point at which differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the Constitution requires to be treated as separate offenses .
*350 Id. at 633, 111 S. Ct. at 2497-98 (emphasis added) (footnote omitted).
The Schad plurality cautioned that it is impractical to attempt to derive a single test for determining the level of verdict specificity required by the U.S. Constitution, stating, "It is ... impossible to lay down any single analytical model for determining when two means are so disparate as to exemplify two inherently separate offenses." Id. at 637, 643, 111 S.Ct. at 2500, 2503. The plurality explained that "instead of such a test our sense of appropriate specificity is a distillate of the concept of due process with its demands for fundamental fairness and for the rationality that is an essential component of that fairness." Id. at 637, 111 S.Ct. at 2500 (citation omitted).
The Minnesota Supreme Court explained the Schad analysis, as elaborated in Richardson , as follows:
[I]f [a] statute establishes alternative means for satisfying an element, unanimity on the means is not required. That is, a jury cannot convict unless it unanimously finds that the government has proved each element of the offense; however the jury need not always decide unanimously which of several possible means the defendant used to commit the offense in order to conclude that an element has been proved beyond a reasonable doubt.
Ihle , 640 N.W.2d at 918.
Based on the elements-versus-means distinction, Lagred argues:
Applying the means test to Minnesota's aggravated robbery statute, the State could prove the crime of aggravated robbery while using a dangerous weapon. The State could allege that the defendant used a knife or a gun. The State could also prove the crime of aggravated robbery with the infliction of bodily harm. The State could allege that the victim suffered a black eye or a bruised hip. Under either scenario, unanimity on the means is not required. Unanimity, however, is required with respect to the independent elements of the crime. The aggravated robbery statute requires the State to prove, as an element of the offense, that either the defendant was armed with a dangerous weapon or the defendant inflicted bodily harm.
(Emphasis added.)
Essentially, Lagred asserts that Minnesota's first-degree aggravated-robbery statute sets forth separate aggravated-robbery offenses, as opposed to a single crime of aggravated robbery that can be committed in alternative ways.
Consistent with the United States Supreme Court's guidance in Schad , we turn to statutory interpretation to determine whether the phrase "is armed with a dangerous weapon ... or inflicts bodily harm upon another" defines separate elements and therefore separate crimes of first-degree aggravated robbery, or alternative means of committing that offense.
Statutory interpretation presents a question of law which an appellate court reviews de novo. State v. Riggs , 865 N.W.2d 679, 682 (Minn. 2015). When interpreting statutes, the goal is to effectuate the intent of the legislature. In re Welfare of Children of J.B. , 782 N.W.2d 535, 539 (Minn. 2010). If a statute is unambiguous, a court must apply its plain meaning without resorting to canons of statutory construction. State v. Hayes , 826 N.W.2d 799, 804 (Minn. 2013).
The language of the aggravated robbery statute unambiguously states that a person commits the crime of first-degree aggravated robbery if, while committing a robbery, he is either "armed with a dangerous weapon" or "inflicts bodily harm."
*351 Minn. Stat. § 609.245, subd. 1. Lagred does not explain, and we do not discern, why the plain language of the statute manifests legislative intent to establish separate and independent offenses, as opposed to one crime that can be committed in alternative ways. The latter plain reading of the statute is consistent with the treatment of similarly written statutes in caselaw.
For example, in Ihle , an obstruction-of-legal-process case, the Minnesota Supreme Court considered an argument that the district court erred because it did not instruct the jury that it must unanimously agree regarding the specific conduct that constituted the alleged obstruction. 640 N.W.2d at 917. The relevant statute provided:
Whoever intentionally does any of the following may be sentenced as provided in subdivision 2:
(1) obstructs, hinders, or prevents the lawful execution of any legal process, civil or criminal, or apprehension of another on a charge or conviction of a criminal offense; [or]
(2) obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties[.]
Minn. Stat. § 609.50, subd. 1 (2000) ; Ihle , 640 N.W.2d at 915. The supreme court concluded, "The close similarity of the conduct described by the statute ... leads us to conclude there is no risk of unfairness in not requiring unanimity. As such, [the] appellant has established no due process violation as to jury unanimity." Ihle , 640 N.W.2d at 919 (citation omitted).
In State v. Pendleton , the supreme court considered an argument that the district court erred in instructing the jury regarding a charge of felony murder while committing kidnapping under Minn. Stat. § 609.185(a)(3) (2004), because it did not instruct the jury that it must unanimously agree regarding the underlying purpose of the defendant's actions. 725 N.W.2d 717, 729-30 (Minn. 2007). The relevant statute provided:
Whoever, for any of the following purposes, confines or removes from one place to another, any person without the person's consent ... is guilty of kidnapping and may be sentenced as provided in subdivision 2: ...
(2) to facilitate commission of any felony or flight thereafter; or
(3) to commit great bodily harm or to terrorize the victim or another[.]
Minn. Stat. § 609.25, subd. 1 (2004) ; Pendleton , 725 N.W.2d at 729-30.
The district court instructed the jury that it could find that the defendant committed kidnapping for any one of the following three purposes: (1) committing great bodily harm, (2) facilitating the commission of murder, or (3) facilitating flight after the crime of assault in the third degree. Pendleton , 725 N.W.2d at 730. The supreme court, relying on Schad , concluded that the instruction did not violate the defendant's due-process right to a unanimous verdict unanimity, reasoning in part that "[t]he three kidnapping purposes available to the jury to prove that [the victim] was murdered while being kidnapped are not so inherently distinct as to violate due process." Id. at 731-33.
In State v. Hart , this court considered whether a district court's disjunctive jury instruction regarding first-degree criminal sexual conduct violated the defendant's right to a unanimous verdict. 477 N.W.2d 732, 737 (Minn. App. 1991), review denied (Minn. Jan. 16, 1992). The relevant statute provided:
A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the first degree *352 if any of the following circumstances exists: ...
(c) circumstances existing at the time of the act cause the [victim] to have a reasonable fear of imminent great bodily harm to the [victim] or another; ... [or]
(e) the actor causes personal injury to the [victim], and ...
(i) the actor uses force or coercion to accomplish sexual penetration[.]
Minn. Stat. § 609.342, subd. 1 (1990) ; Hart , 477 N.W.2d at 737.
This court explained:
The [district] court did not give separate jury instructions for each count. The elements were listed and where the clauses differed, the [district] court gave the element in the disjunctive. Only one jury verdict form was submitted to the jury for the criminal sexual conduct charge. In essence, the jury was instructed that it could find [the] appellant guilty of first degree criminal sexual conduct if it found that [the victim] either received a personal injury or had fear of harm.
Hart , 477 N.W.2d at 737-38 (footnote omitted).
This court concluded that "the 'either/or' instruction allowing the jury to consider personal injury or submission due to a threat of bodily harm, but not requiring the jury to specify which, [did not mandate] a second trial," noting that " Schad does not dictate, as a constitutional element, that jurors always have to agree on the alternative ways a crime can be committed." Id. at 739.
Lastly, in State v. Dalbec , this court considered an argument that the district court erred by failing to instruct the jury that it must unanimously agree regarding which of the defendant's acts constituted the charged offense of domestic assault. 789 N.W.2d 508, 510-11 (Minn. App. 2010), review denied (Minn. Dec. 22, 2010). This court found no error, reasoning:
Pendleton , the kidnapping case, provides a useful analysis for distinguishing between elements and means of proving elements. Minn. Stat. § 609.25 (2008), prohibiting the crime of kidnapping, states that "[w]hoever, for any of the following purposes, confines or removes from one place to another, any person without the person's consent ... is guilty of kidnapping." Thereafter follows a list of four possible means by which kidnapping can be committed. As the Pendleton court suggested, the element of the kidnapping offense was the removal of a person from one place to another or confinement, for a criminal purpose; the various purposes are means for committing the act of kidnapping. The wording of the domestic assault statute, Minn. Stat. § 609.2242, subd. 1 (2008), is similar: "Whoever does any of the following against a family or household member ... commits an assault." Thereafter follows alternative means by which an assault may be committed, either by intentionally causing fear of immediate bodily harm or death or by intentionally inflicting or attempting to inflict bodily harm.
Thus, consistent with Pendleton , the act of assault is the element of the crime of domestic assault, and an assault can be committed in any of three ways. In theory, each of [the] appellant's acts over the course of November 30, 2008, could be one of these disparate means of accomplishing this element. The jury could agree, therefore, that [the] appellant intended to assault [the victim], but need not agree on whether the assault was accomplished by causing fear or inflicting or attempting to inflict bodily harm.
*353 Id. at 512-13 (footnote and citations omitted).
We observe that the relevant charging statutes in Ihle , Pendleton , Hart , and Dalbec are similarly structured. They first state that certain conduct constitutes a crime. See Minn. Stat. § 609.2242, subd. 1 ("Whoever does any of the following against a family or household member ... commits an assault[.]"); Minn. Stat. § 609.25, subd. 1 ("Whoever, for any of the following purposes, confines or removes from one place to another, any person without the person's consent ... is guilty of kidnapping and may be sentenced as provided in subdivision 2."); Minn. Stat. § 609.50, subd. 1 ("Whoever intentionally does any of the following may be sentenced as provided in subdivision 2[.]"); Minn. Stat. § 609.342, subd. 1 ("A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the first degree if any of the following circumstances exists.").
Those statutes next list the alternative acts, purposes, or circumstances that result in commission of the crime. See Minn. Stat. § 609.2242 (listing two alternative acts); Minn. Stat. § 609.25, subd. 1 (listing four alternative purposes); Minn. Stat. § 609.50, subd. 1 (listing four alternative acts); Minn. Stat. § 609.342, subd. 1 (listing eight alternative circumstances).
The only difference between the statutes at issue in Ihle , Pendleton , Hart , and Dalbec and the aggravated-robbery statute at issue here is the format of the aggravated-robbery statute. Instead of stating, in one clause, that certain conduct constitutes a crime and following that clause with a list of the acts or alternative circumstances that result in commission of the crime, the aggravated-robbery statute does not use a listing format. Instead, it sets forth the alternatives, before the identified crime, in one sentence.
Again, the aggravated-robbery statute provides:
Whoever, while committing a robbery, is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or inflicts bodily harm upon another, is guilty of aggravated robbery in the first degree and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $35,000, or both.
Minn. Stat. § 609.245, subd. 1.
The format of the aggravated-robbery statute easily could be changed to match the listing format of the statutes at issue in Ihle , Pendleton , Hart , and Dalbec as follows:
Whoever, while committing a robbery, does any of the following is guilty of aggravated robbery in the first degree and may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $35,000, or both:
(1) is armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon; or
(2) inflicts bodily harm upon another.
Although Lagred acknowledges the formatting distinction, he does not provide, and we do not discern, a reason to conclude that the distinction reflects legislative intent to set forth separate, independent first-degree aggravated robbery crimes, as opposed to alternative means of committing that offense. In either format, the aggravated-robbery statute sets forth alternative means of committing the identified crime, just like the statutes at issue in Ihle , Pendleton , Hart , and Dalbec .
*354 Based on the plain language of the aggravated-robbery statute and the treatment of similar statutes in Ihle , Pendleton , Hart , and Dalbec , we conclude that the phrase "is armed with a dangerous weapon ... or inflicts bodily harm upon another" sets forth alternative means of committing a first-degree aggravated robbery, and not separate elements of that offense.
Consistent with Schad , we now consider whether the legislature's articulation of alternative means of committing first-degree aggravated robbery violates due process, that is, whether the alternative means are consistent with fundamental fairness. See Schad , 501 U.S. at 637, 111 S.Ct. at 2500. In assessing whether alternative statutory means violate due process, the Minnesota Supreme Court has considered whether the means are distinct, dissimilar, or inherently separate. See Pendleton , 725 N.W.2d at 732 (stating that the three kidnapping purposes available to the jury were "not so inherently distinct as to violate due process"); Ihle , 640 N.W.2d at 919 (stating that the alternative statutory types of conduct were not so dissimilar "as to result in fundamental unfairness"); see also State v. Crowsbreast , 629 N.W.2d 433, 439 (Minn. 2001) ("The grouping of past acts of domestic abuse as a preliminary factual element of domestic abuse homicide ... is in no way an irrational or unfair definition of domestic abuse homicide, nor are those acts so inherently separate as to present a due process issue as to jury unanimity.").
The alternatives in Minnesota's first-degree aggravated-robbery statute are no more distinct, dissimilar, or inherently separate than the statutory alternatives in Pendleton , Ihle , and Crowsbreast . Moreover, the breadth of possible conduct embodied in the aggravated-robbery alternatives is narrow, and it includes behaviors that have similar degrees of seriousness. See Richardson , 526 U.S. at 819, 119 S.Ct. at 1711 (stating that a "statute's breadth also argue[d] against treating each individual violation as a means," noting that the statute "cover[ed] many different kinds of behavior of varying degrees of seriousness").
Lastly, in Pendleton , the supreme court considered that the legislature "chose to punish kidnapping similarly, regardless of which purpose is found underlying the commission of the crime." 725 N.W.2d at 732. The supreme court reasoned, "While the legislature's determination of penalties is not dispositive, it lends credence to assigning similar blameworthiness or culpability among each purpose for kidnapping," noting that the plurality in Schad said that "fundamental fairness and rationality were met if the two [alternatives] reasonably reflect notions of equivalent blameworthiness or culpability." Id. at 731-32 (quotation omitted). The circumstances here are similar: the legislature prescribed one punishment for first-degree aggravated robbery regardless of which means is used to commit the crime. See Minn. Stat. § 609.245, subd. 1 (prescribing penalty of "not more than 20 years" of imprisonment for first-degree aggravated robbery). The legislature's penalty determination indicates that the alternatives in the aggravated-robbery statute reflect notions of similar blameworthiness and culpability, consistent with fundamental fairness.
For the reasons above, we hold that the alternative statutory means of committing first-degree aggravated robbery do not create a risk of unfairness that violates due process. Thus, a jury need not unanimously agree regarding which of those means was used to commit a first-degree aggravated robbery.
*355 DECISION
Because the alternatives set forth in Minnesota's first-degree aggravated-robbery statute are means of committing the offense, and those alternatives are consistent with the fundamental fairness required by due process, the district court did not err by not instructing the jury that it must unanimously agree regarding the means by which Lagred committed that offense.
Affirmed.