STATE of Minnesota, Respondent,

v.

David Paul HAGER, Appellant.

No. A05–2410.

Court of Appeals of Minnesota.

Feb. 23, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and John J. Muhar, Itasca County Attorney, Todd S. Webb, Assistant County Attorney, Grand Rapids, MN, for respondent.

John M. Stuart, State Public Defender, Michael F. Cromett, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; SHUMAKER, Judge; and MINGE, Judge.

## OPINION

MINGE, Judge.

Appellant David Hager challenges his convictions of receiving stolen property, aiding an offender, and obstructing legal process. Appellant contends that the district court's jury instructions on aiding an offender and obstructing legal process were prejudicially erroneous, that his conviction for possession of stolen property is not supported by sufficient evidence, and that the district court erred by imposing a sentence for both aiding an offender and obstructing legal process. We affirm in part, reverse in part, and remand.

## FACTS

D.S. reported theft from his Itasca County lake property. This was the second time in less than a year that items had been stolen from D.S.'s property. The items stolen included a four-wheeler, a generator, chain saws, tools, a pump, a tackle box, a garbage can, a television, a portable shed, a camper trailer, plastic chairs, a picnic table, and a grill.

Itasca County Deputy Sheriff Mark Greiner responded to D.S.'s report. He remembered seeing items similar to those reported stolen while he was executing an arrest warrant on appellant's property. Deputy Greiner obtained a search warrant and, accompanied by four other deputies, went to appellant's property to conduct a search. After knocking on the door of appellant's home, Deputy Greiner saw appellant inside and heard him yell "cops." Because the occupants did not open the door, the deputies forced their way into the residence. Appellant, appellant's two sons, and three women were inside.

The officers testified that the residence's occupants failed to comply with officers' instructions. Deputy Greiner and Deputy Ryan Gunderson saw Samuel Hager, one

of appellant's sons, throw an object into a barrel stove, where a fire was burning. When the officers attempted to grab Samuel Hager, he resisted. At trial, Deputy Greiner testified that when he attempted to open the stove to determine what Samuel Hager had thrown inside, appellant pushed him out of the way and lay down in front of the stove, delaying the deputies from looking inside. The officers also testified that appellant pushed Deputy Aaron Apitz, which appellant disputed.

While the officers attempted to subdue the home's occupants, the stove's vent dislodged, smoke poured into the room, and there was a pervasive, irritating "chemical" smell. The smoke caused the officers to cough for 30–45 minutes. One officer became sick. Deputy Apitz testified that he believed the smell was burning methamphetamine.

After subduing the occupants and securing the scene, the deputies searched appellant's residence. They found a glass pipe in the stove. They also observed several of the items listed in the search warrant. The officers applied for a second warrant to search the residence for other items, including drugs. During the second search, the officers found drug paraphernalia, including pen tubes containing a white, powdery substance, a roach clip, a razor blade, a digital scale, and plastic baggies. Deputy Greiner testified that the roach clip had a marijuana odor. The officers did not find any drugs during the search.

Behind appellant's residence, officers found D.S.'s camper and a dismantled shed that matched the description of the one D.S. reported stolen. Appellant claimed that his son, Samuel Hager, had purchased the camper and shed from Sheldon Warner, but that otherwise, he did not know where the items had come from. Appellant also claimed that he did not know any of the items were stolen. Warner testified that he had never seen any of the items before.

Samuel Hager testified that he purchased the camper and shed from Warner in July or August 2004 for about $1,000, and that he did not know any of the items had been stolen. Samuel also confirmed that he threw a glass pipe into the stove after the officers entered the residence.

The record shows that Samuel Hager was convicted of gross misdemeanor obstructing legal process. The record is silent as to whether he was convicted of any other crimes. Appellant was charged with felony possession of stolen property (in violation of Minn.Stat. § 609.53, subd. 1 (2004)), felony aiding an offender (in violation of Minn.Stat. § 609.495, subd. 1(a) (2004)), and gross misdemeanor obstructing legal process (in violation of Minn.Stat. § 609.50, subds. 1(2), 2(2) (2004)). A jury found appellant guilty of all three counts. The district court sentenced appellant to 19 months in prison for receiving stolen property, a concurrent 19–month sentence for aiding an offender, and 90 days, concurrent, for obstructing legal process. This appeal follows.

## ISSUES

I. Was the district court's jury instruction for aiding an offender prejudicially erroneous, entitling appellant to a new trial?

II. Was the district court's jury instruction for obstructing legal process prejudicially erroneous, entitling appellant to a new trial?

III. Is appellant's conviction for possession of stolen property supported by sufficient evidence?

IV. Did the district court err by imposing sentences for appellant's convictions of aiding an offender and obstructing legal process?

## ANALYSIS

### I.

The first issue is whether the district court's aiding-an-offender jury instruction was prejudicially erroneous and, if so, whether appellant is entitled to a new trial on this charge. Appellant contends that the instruction was prejudicially erroneous because it neither identified the crime that appellant aided nor limited the conviction to aiding a crime that was a felony.

### A. Plain Error

 Appellant did not object at trial to the jury instruction he now challenges. A party's failure to object to a jury instruction at trial generally waives consideration of the issue on appeal. *State v. Cross,* 577 N.W.2d 721, 726 (Minn.1998). But we may review the issue for plain error. *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998). For an appellate court to grant relief for "an unobjected-to error, there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights." *Id.* If all three prongs of this test are satisfied, the court may "remedy the error to ensure fairness and the integrity of the judicial proceedings." *State v. Ihle,* 640 N.W.2d 910, 916 (Minn.2002).

 District courts are allowed "considerable latitude" in the selection of language for jury instructions. *State v. Baird,* 654 N.W.2d 105, 113 (Minn.2002). We review jury instructions in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). "An instruction is in error if it materially misstates the law." *State v. Kuhnau,* 622 N.W.2d 552, 556 (Minn.2001).

Minnesota's aiding-an-offender statute provides:

> Whoever harbors, conceals, aids, or assists by word or acts another whom the actor knows or has reason to know has committed a crime under the laws of this or another state or of the United States with intent that such offender shall avoid or escape from arrest, trial, conviction, or punishment, may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $5,000, or both if the crime committed or attempted by the other person is a felony.

Minn.Stat. § 609.495, subd. 1(a).[1] The district court instructed the jury on the crime of aiding an offender, in pertinent part, as follows:

> The elements of aiding an offender are:
>
> First, Samuel Hager committed a crime.
>
> Second, the defendant knew or had reason to know that Samuel Hager had committed a crime. "To know" requires that the defendant believed that Samuel Hager had committed a crime.

 Here, the state concedes that the district court's failure to specify the criminal offense that appellant aided constitutes plain error. We agree. Specificity in an aiding-the-offender offense instruction is important. *See State v. Stempf,* 627 N.W.2d 352, 355 (Minn.App.2001). When there is ambiguity about what predicate conduct by the original offender constitutes the crime, the instruction is erroneous. *See id.* at 354. Further, unless the

---

**1.** The criminal code identifies two "aiding" offenses. The first is the offense just set forth, addressing the conduct of aiding the offender. Minn.Stat. § 609.495, subd. 1(a). The statute sets forth the penalties for this offense. *Id.* The second "aiding" offense is aiding and abetting in the commission of a crime. Minn. Stat. § 609.05, subd. 1 (2004). This aiding offense is otherwise defined by the criminal law and carries the penalty specified for that offense. *Id.*

full jury identifies the offender's criminal act that the accused has aided, the accused may be denied the right to a unanimous verdict. *See State v. Pendleton,* 725 N.W.2d 717, 730–31 (Minn.2007); *Stempf,* 627 N.W.2d at 355; *State v. Begbie,* 415 N.W.2d 103, 105–06 (Minn.App.1987), *review denied* (Minn. Jan. 20, 1988).

■ In *Pendleton,* the Minnesota Supreme Court reviewed United States Supreme Court and state court decisions and recognized the distinction between the basic elements of the crime and the facts underlying those basic elements. 725 N.W.2d at 731. While unanimity is required on the basic elements of the crime, it is not regarding the facts. *Id.* The *Pendleton* analysis limits the unanimous verdict requirement to situations where the offenses of the accused are inherently separate and juror confusion or disagreement would deny the accused due process. *Id.* at 732; *see also Ihle,* 640 N.W.2d at 917–19 (finding the requirement of unanimity inapplicable when the conduct of the accused obstructed officer action in several ways at the same time). Because, as concluded below, the predicate offense in this aiding-an-offender charge must be a felony, the identification of the offense is not simply an underlying fact, but a basic element of the crime.

The state argues that because the context at trial made it clear that the predicate crime was Samuel Hager's felony possession of methamphetamine, appellant failed to show that the error affected his substantial rights. This argument brings us back to the conduct of Samuel Hager, who appellant aided. The record indicates that, at trial, much of the evidence focused on Samuel's possession of methamphetamine. The parties admitted that Samuel Hager had possessed methamphetamine in other contexts. The state argues that the only reason for the struggle at the time of the first search warrant's execution was to prevent the officers from discovering Samuel's methamphetamine. The state contends that the jury only had this criminal conduct by Samuel in mind when it reached its verdict.

However, we note that there were several things happening during the search and accompanying tumult. The officers discovered stolen property. Initially, the search was triggered by the theft complaint and the investigation into what property was at appellant's home, who stole the property, whether Samuel Hager had bought the property, why appellant had the property, and possibly whether appellant was keeping some of the property for his son. A significant part of the trial testimony dealt with the theft offense. The jury may have decided that this line of evidence supported a charge that appellant aided Samuel Hager in concealing or covering up the crime of theft.

The state emphasizes that the record also indicates that by rolling on the floor in front of the barrel stove, appellant temporarily prevented the officers from opening the stove and delayed or prevented discovery of what Samuel had thrown inside the stove. The toxic smoke that sickened one of the officers is evidence that there was a potent substance inside and that appellant's obstructionist activity may have prevented discovery of that substance. Also, the officers eventually found a glass pipe inside the stove. Samuel Hager admitted that he tossed that pipe in the stove. This was arguably a pipe used to smoke methamphetamine. The jury may have decided that possession of such a pipe by Samuel was a criminal act. *See* Minn.Stat. § 152.092 (2004) (providing that possession of drug paraphernalia is a petty misdemeanor).

Finally, the record is clear that Samuel was in fact convicted of obstructing legal process. Perhaps the jury determined

that appellant aided Samuel in Samuel's obstruction offense. The record does not clearly identify the crime or crimes appellant aided. In fact, the jury was not even clearly told which specific crimes were in play. Instead, the jury had the entire fact scenario to consider and was permitted to choose a crime that appellant may have aided.

This uncertainty is inherently prejudicial. As previously stated, appellant is entitled to a unanimous verdict on each basic element of his charged offense. Minn. R.Crim. P. 26.01, subd. 1(5); *Pendleton*, 725 N.W.2d at 730. When more than one predicate act could constitute the predicate offense and the acts relate to different crimes and arise out of complex circumstances, it is not clear which offense the jury identified. Here, one group of jurors may have determined that the theft offense by Samuel was the predicate criminal conduct, while another group may have disagreed but viewed methamphetamine possession as the requisite predicate offense, the third group may have only thought of paraphernalia possession as the offense, and a fourth may have focused on the obstruction charge against Samuel. There is no assurance that the jury reached a unanimous decision on the predicate offense by Samuel and the aiding conduct by appellant. Because we cannot be assured of a unanimous verdict, we conclude that appellant's substantive rights have been affected and that the plain-error test is met. Accordingly, we reverse and remand the aiding-an-offender conviction.

## B. Felony Requirement

■ We also face the issue of whether the predicate crime for an aiding-an-offender conviction must be a felony. Although the instruction used by the district court did not reach this question, the matter must be considered in a new trial.

The words "crime" and "felony" both appear in Minnesota's aiding-an-offender statute. Minn.Stat. § 609.495, subd. 1(a). Arguably, because the statute describes the predicate offense as a "crime" and not a "felony," if the aiding-an-offender sentence is only imprisonment or a fine, the predicate crime need only be a gross misdemeanor or even a misdemeanor. *Id.* But it is also possible to read the last phrase of the subsection, "if the crime committed or attempted by the other person is a felony," as modifying the entire subsection and as a condition precedent for finding criminal liability. *Id.* Because the statutory language is ambiguous, we proceed to examine the statute's legislative history. *In re Molly*, 712 N.W.2d 567, 571 (Minn.App.2006).

Minnesota's aiding-an-offender statute was amended in 2001. *See* 2001 Minn. Laws 1st Spec. Sess. ch. 8, art. 8, § 24, at 2082–83. Prior to that amendment, the word "felony" appeared in the earlier portion of the subsection in place of the present word "crime." *Id.* at 2082. Prior to the amendment, it was clear that the predicate offense must be a felony. The amendment not only substituted "crime" for "felony," but it also reduced the state's burden of proof by allowing the prosecutor to show that the accused "has reason to know" a crime has been committed. *Id.* At the same time, the amendment added the following language at the end of the subsection: "if the crime committed or attempted by the other person is a felony." *Id.* at 2038.

Legislative history indicates that the amendment was a reaction to a court decision holding that the prosecution must prove that the accused actually knew that a felony was being committed. *See In re Welfare of A.C.N.*, 583 N.W.2d 303, 306 (Minn.App.1998); Hearing on S.F. No. 1334 Before the Senate Comm. on Crime

Prevention (Apr. 6, 2001). While the change eliminates this high standard, the legislative history does not indicate an intent to eliminate the requirement that the predicate crime be a felony.

■ We also note that allowing the statute to reach aiding of underlying crimes that are less than a felony creates a logical inconsistency. Under such an interpretation, a person convicted of aiding a misdemeanor offender could be subject to a more severe penalty than would be imposed on the person actually committing the underlying misdemeanor offense. Finally, as a general rule of law, courts have developed the rule of lenity. According to the rule of lenity, "[t]he ambit of an ambiguous criminal law should be construed narrowly...." *State v. Zeimet*, 696 N.W.2d 791, 794 (Minn.2005). As applied to this case, the rule of lenity suggests that the underlying offense must be a felony. Based on the foregoing considerations, we conclude that the predicate offense must be a felony and that the jury should make that determination.

## II.

■ The next issue is whether the district court's obstructing-legal-process jury instruction was prejudicially erroneous and, if so, whether appellant is entitled to a new trial on this charge. Generally, an appellant's failure to object to the instruction at trial waives consideration of the issue on appeal. *Cross*, 577 N.W.2d at 726. But we may review for plain error, as described in our discussion of the previous issue. *See Griller*, 583 N.W.2d at 740.

■ Appellant contends that his conviction for obstructing legal process was the result of plain error, affecting his substantial rights, because the jury instruction failed to limit the offense to *physical* obstruction or interference with a peace officer. The relevant statute provides that an individual obstructs legal process when he intentionally "obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties." Minn.Stat. § 609.50, subd. 1(2). Minnesota caselaw requires that the words or acts of the accused have the effect of a physical obstruction. *Ihle*, 640 N.W.2d at 915–16; *State v. Krawsky*, 426 N.W.2d 875, 877 (Minn.1988). In *Krawsky*, for example, the supreme court construed the obstructing-legal-process statute to "forbid[ ] intentional physical obstruction or interference with a police officer in the performance of his official duties." *Krawsky*, 426 N.W.2d at 877.

The recommended jury instruction for obstructing legal process has been updated to reflect the *Ihle* and *Krawsky* decisions. *See* 10A *Minnesota Practice*, CRIMJIG 24.26 cmt. (2006). This instruction describes the second element of the crime in this manner:

> [T]he defendant physically obstructed, hindered, or prevented the execution of legal process. "Physically obstructed, hindered, or prevented" means the words and acts of the defendant must have the effect of substantially frustrating or hindering the officer in the performance of the officer's duties.

10A *Minnesota Practice*, CRIMJIG 24.26 (2006).

Here, in contrast to the updated jury instructions, the district court instructed the jury, in pertinent part, as follows:

> The elements of obstructing legal process are: ...
>
> Second, the defendant obstructed, resisted, or interfered with Deputy Greiner, and/or Deputy Apitz, and/or Deputy Gunderson in the performance of official duties.

During its deliberations, the jury presented the district court with a question: "For Count 3 of obstructing legal process, does the definition of obstruction or interfer-

ence include verbal actions, or is it limited to physical actions?" Both attorneys agreed that the jury should be told: "You have the instructions necessary to make your decision." The district court then instructed the jury accordingly.

Here, the obstructing-legal-process jury instruction did not fairly and adequately explain the law as interpreted by the *Ihle* and *Krawsky* decisions. This error was plain. Respondent concedes that the instruction constitutes plain error but maintains that appellant has failed to prove that the error affected his substantial rights. But the jury asked a question during its deliberations regarding physical acts, indicating its uncertainty. Under these circumstances, we conclude that the erroneous instruction prejudiced appellant's substantial rights, and we reverse and remand the conviction of obstructing legal process.

### III.

The next issue is whether appellant's conviction of possession of stolen property is supported by sufficient evidence. In considering a claim of insufficient evidence, "our review ... is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We must assume that "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). This is especially true when resolution of the matter depends mainly on conflicting testimony. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980). "We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that

the defendant was proven guilty of the offense charged." *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn.2004) (quotation omitted).

"[A] conviction based entirely on circumstantial evidence merits stricter scrutiny than convictions based in part on direct evidence." *State v. Jones*, 516 N.W.2d 545, 549 (Minn.1994). Even though we scrutinize circumstantial evidence more carefully, it "is entitled to the same weight as direct evidence." *State v. Bauer*, 598 N.W.2d 352, 370 (Minn.1999). The circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the defendant's guilt as to exclude beyond a reasonable doubt any other reasonable inference. *Jones*, 516 N.W.2d at 549. But the jury is best suited to evaluate circumstantial evidence, and its verdict is deserving of deference. *Webb*, 440 N.W.2d at 430.

A person is guilty of receiving stolen property when that person "receives, possesses, transfers, buys or conceals any stolen property or property obtained by robbery, knowing or having reason to know the property was stolen or obtained by robbery...." Minn.Stat. § 609.53, subd. 1. The crime is a felony when the value of the property exceeds $500. Minn.Stat. § 609.52, subd. 3(3)(a) (2004).

Appellant contends that there is insufficient evidence that he knew or had reason to know that the property at issue was stolen. Here, property stolen from D.S. was found on appellant's property, both inside and outside of his home. This property had been stolen from D.S. during two separate occasions. Legitimate acquisition of property from both thefts is improbable and presents a question of credibility. And, with few exceptions, appellant was unable to explain where the property had come from. An

individual's "unexplained possession of stolen property within a reasonable time after a ... theft will in and of itself be sufficient to sustain a conviction." *State v. Bagley,* 286 Minn. 180, 188, 175 N.W.2d 448, 454 (1970).

Both appellant and Samuel Hager testified that Samuel purchased certain property from Sheldon Warner. But Warner denied ever having seen the property in question. This presented a question of credibility, and we defer to the jury's opportunity to view witnesses and make credibility determinations. *State v. Pippitt,* 645 N.W.2d 87, 94 (Minn.2002). Samuel also testified that he paid approximately $1,000 for the camper and shed. But D.S. estimated the total value of these two items at $2,700, nearly three times the amount Samuel claimed he paid. A jury may infer that the accused knows that property is stolen when the defendant purchases the property "shortly after it [is] stolen for a price far below its actual value." *State v. Simonson,* 298 Minn. 235, 236, 214 N.W.2d 679, 681 (1974).

Appellant also contends that the evidence is insufficient to support his conviction because he did not attempt to hide the shed or camper. But the evidence regarding the property's location was contradictory. Deputy Greiner testified that the camper "couldn't really [be] see[n] from the road." Appellant testified that the shed could be seen "from a mile away." But the shed had been taken apart and may have been unrecognizable in its dismantled form. In any event, some of the smaller stolen items were found inside appellant's home.

Based on the record in this case, it was not unreasonable for the jury to draw the inference that appellant knew the property was stolen. Accordingly, we conclude that sufficient evidence supports appellant's conviction for receiving stolen property and affirm that conviction.

## IV.

The final issue is whether the district court erred by imposing a sentence for both aiding an offender and obstructing legal process. "[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses...." Minn.Stat. § 609.035, subd. 1 (2004). The single behavioral incident rule "protects defendants from both multiple sentences and multiple prosecutions and ensures that punishment [is] commensurate with the criminality of defendant[s'] misconduct." *State v. Williams,* 608 N.W.2d 837, 841 (Minn.2000) (quotation omitted). The factors that we use to determine whether the offenses constitute a single behavioral incident include "time, place, and whether the offenses were motivated by a desire to obtain a single criminal objective." *State v. Soto,* 562 N.W.2d 299, 304 (Minn.1997). The state bears, by a preponderance of the evidence, the burden to show that the conduct does not constitute a single behavioral incident. *Williams,* 608 N.W.2d at 840–41. We will not reverse a district court's determination of whether the conduct arose from a single behavioral incident unless that determination is clearly erroneous. *State v. Heath,* 685 N.W.2d 48, 61 (Minn. App.2004), *review denied* (Minn. Nov. 16, 2004).

Here, the state concedes that the sentences of aiding an offender and obstructing legal process constitute error. In this appeal it appears that both charges are based on conduct that occurred during the execution of the first search warrant. As thus presented, both offenses occurred during a single course of conduct and sentencing appellant concurrently for both offenses was impermissible.

## DECISION

Because appellant's conviction for receiving stolen property is supported by

sufficient evidence, we affirm. But because the district court erroneously instructed the jury on the law of aiding an offender and obstructing legal process, and impermissibly sentenced appellant for both convictions, we reverse those convictions and remand.

**Affirmed in part, reversed in part, and remanded.**