*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2256**

State of Minnesota,
Respondent,

vs.

Malcolm Roy Evans,
Appellant.

**Filed December 15, 2014
Affirmed
Halbrooks, Judge
Dissenting, Ross, Judge**

Clay County District Court
File No. 14-CR-13-2607

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Lori H. Conroy, Assistant County Attorney, Moorhead, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Erik Irving Withall, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Halbrooks, Judge; and Ross, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant Malcolm Roy Evans challenges his conviction of misdemeanor domestic assault–harm, arguing that the district court erroneously instructed the jury on

the elements of the crime and that the prosecutor committed misconduct by eliciting inadmissible testimony and misstating the law in closing argument. We affirm.

## FACTS

Mid-morning on August 4, 2013, Evans arrived home after a night of drinking and woke his wife, D.E. They argued about his intention to take her malt liquor to drink it with another woman.[1] After "mock punching" the air next to D.E.'s face about three times on each side, D.E. moved and Evans struck D.E. in the face. She then backed away, and Evans placed his hands around her neck and squeezed. Evans left the apartment, and D.E. called 911, reporting that Evans had hit and choked her.

Moorhead police officers responded to D.E.'s 911 call within minutes. One officer interviewed D.E. and photographed bruising that he observed on her neck and face. A second officer checked the area for Evans, arresting him less than an hour later. The state charged Evans with violating Minn. Stat. § 609.2242, subd. 1(2) (2012) (domestic assault–harm).

At a jury trial in which Evans represented himself, D.E. and the two responding police officers testified. During D.E.'s testimony, the prosecutor played recordings of

---

[1] The following exchange occurred during cross-examination of D.E. by the self-represented defendant:

> Q: So I was going to take your Sparks and go . . . drink them with another female and you did not appreciate that.
> A: Correct.
> Q: And as you so beautifully pointed out, I was up all night drinking Windsor, and I drunk a 1.75 bottle of Windsor straight, so I was—would drunk be a fair statement to say?
> A: Yes.

D.E.'s 911 call and the statement she gave to police on August 4. Two sets of photographs of D.E.'s face and neck injuries were admitted into evidence—the first set from August 4 and the second set taken eight days later. The district court instructed the jury on the elements of domestic assault generally and provided the standard domestic assault–harm instruction as well as an excerpt from the standard domestic assault–fear instruction. Neither party objected to the jury instructions.

In closing argument, the prosecutor focused on evidence that Evans had purposely choked D.E., which hurt her and left bruises on her neck. The prosecutor also argued that D.E. was afraid after Evans punched her face, which supported the argument that the subsequent choking was not part of any mock fighting or an attempt by Evans to get past D.E. and leave the apartment. Evans argued that his contact with D.E.'s face was accidental, her injuries were minor, and the state had not proved the element of intent. On rebuttal, the prosecutor argued:

> [T]he state is not focused on the hit [to D.E.'s face]. The state is focused on what happened after that. The state's theory in this case is not that the hit was the intentional act in this case. The hit caused [D.E.] to fear. The hit caused her to start backing up. And then what happened?
>
> How do we know that the defendant did something intentionally? Well, the defendant intentionally put his hands around his wife's neck to the extent that they left fingerprint type bruise marks on her neck. Ladies and gentlemen of the jury, that establishes intent.

After 25 minutes of deliberation, the jury found Evans guilty, and the district court convicted Evans of violating Minn. Stat. § 609.2242, subd. 1(2) (domestic assault–harm). Evans now appeals.

3

**D E C I S I O N**

**I.**

Although it is an issue on appeal, Evans did not object to the jury instructions at trial. We review unobjected-to jury instructions for plain error. *State v. Hayes*, 831 N.W.2d 546, 555 (Minn. 2013). In applying the plain-error analysis to jury instructions, we will reverse only if the appellant establishes that the district court (1) committed an error; (2) that was plain; (3) that affected the appellant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011).

Because jury instructions must define the crime charged and explain the elements of the offense, *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001), "failure to properly instruct the jury on all elements of the offense charged" can constitute plain error, *State v. Gunderson*, 812 N.W.2d 156, 161 (Minn. App. 2012) (quotation omitted). "[I]t is sufficient that the error is plain at the time of the appeal." *State v. Ihle*, 640 N.W.2d 910, 917 (Minn. 2002) (quotation omitted). But plainly erroneous jury instructions warrant reversal only if the error demonstrably affected the defendant's substantial rights. *Id.* An error affects substantial rights if "there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *State v. Milton*, 821 N.W.2d 789, 809 (Minn. 2012) (quotations omitted).

Evans argues that the district court's instructions to the jury were plainly erroneous because they permitted the jury to find him guilty of domestic assault–fear, with which Evans was not specifically charged. The state concedes that the charging

citation references only bodily harm but argues that even if the jury instructions referencing fear were erroneous, the error was neither plain nor affected Evans's substantial rights.

District courts enjoy "broad discretion and considerable latitude in choosing the language of jury instructions." *State v. Smith*, 674 N.W.2d 398, 400 (Minn. 2004). Appellate courts "review the jury instructions in their entirety to determine whether the instructions fairly and adequately explain the law of the case." *Milton*, 821 N.W.2d at 805 (quotation omitted).

"Jury verdicts in all criminal cases must be unanimous." *State v. Pendleton*, 725 N.W.2d 717, 730 (Minn. 2007) (citing Minn. R. Crim. P. 26.01, subd. 1(5)). The jury must unanimously agree that the state proved each element of the charged offense. *Id.* at 730-31. But unanimity is not required with respect to alternate means or ways of satisfying an element of the offense. *Ihle*, 640 N.W.2d at 918. We have held that the two subparts of Minn. Stat. § 609.2242, subd. 1, present alternative means of committing the offense of domestic assault. *State v. Dalbec*, 789 N.W.2d 508, 512-13 (Minn. App. 2010), *review denied* (Minn. Dec. 22, 2010).

A defendant is guilty of misdemeanor domestic assault if he "(1) commits an act with intent to cause fear in [a family or household member] of immediate bodily harm or death; or (2) intentionally inflicts or attempts to inflict bodily harm upon [a family or household member]." Minn. Stat. § 609.2242, subd. 1. The standard jury instructions for misdemeanor domestic assault closely track Minn. Stat. § 609.2242, subd. 1, distinguishing the two subparts. *See* 10 *Minnesota Practice*, CRIMJIG 13.44-.46 (2006).

5

The district court here instructed the jury by giving the entire standard instruction relating to bodily harm as well as part of the instruction relating to fear.

Had Evans been charged with a violation of subdivision one generally, the instructions given by the district court may have fairly and adequately explained the law of the case. But Evans was only charged with subpart two (bodily harm). Because the district court unnecessarily instructed the jury on assault–fear when Evans was specifically charged with assault–harm, we conclude that Evans has met his burden of showing that the jury instructions misstated the law. We next consider whether the error was plain.

"[E]rror is plain if it is clear or obvious" or "if the error contravenes case law, a rule, or a standard of conduct." *State v. Vance*, 734 N.W.2d 650, 658 (Minn. 2007) (quotations omitted), *overruled on other grounds by State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). Evans argues that the district court's error here is plain because "Minnesota courts agree that the two subparts of the domestic-assault statute represent separate crimes." We disagree, as our case law provides that the two subparts are alternative means of proving the same offense. *Dalbec*, 789 N.W.2d at 512-13. We therefore conclude that Evans has not met his burden of showing that the error was plain.

Evans also argues that his substantial rights were affected by the erroneous jury instructions because he was not on notice of the charge of domestic assault–fear and the instruction relieved the state of its burden of proving each element of domestic assault– harm. The state responds that there is no reasonable likelihood that the instruction had a significant effect on the jury's verdict. As with the first two plain-error requirements,

6

Evans bears the burden of persuasion on the third prong, which is a "heavy burden." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998).

Evans contends that although the state focused generally on evidence relating to bodily harm, it altered its strategy in closing argument to focus on fear. Having reviewed the trial transcript in its entirety, we disagree. The prosecutor focused squarely on bodily harm and specifically on the evidence that Evans grabbed D.E. by the neck, causing pain and leaving bruises that were visible and photographed. The prosecutor did not mention fear in her opening statement. In closing argument, the prosecutor summarized the case as follows:

> And, ladies and gentlemen of the jury, that is what the testimony and the evidence shows. That the defendant, Malcolm Evans, laid hands on his wife with intent to cause her harm. He was angry. She was not letting him do something that he wanted to do. They were fighting. It wasn't a move to get her out of the way. It was grabbing her around the neck and squeezing in anger. That is intent to cause bodily harm. And it did cause [her] bodily harm. It caused her pain and it caused her bruising.

Evans then gave his closing argument, focusing mostly on bodily harm, but stating, "Was she scared? She said she was scared, so I don't know what she feels. If she says she was scared, she was scared. But was it my intent to make her scared? That's what it comes down to."

The prosecutor in rebuttal argued that the evidence that D.E. was afraid and backing away was offered to prove intent with respect to the subsequent choking. The prosecutor did not argue that Evans laid hands on D.E. in an effort to scare her. In the context of the overwhelming evidence supporting a conviction of domestic assault–harm,

7

we conclude that there is no reasonable likelihood that the erroneous instruction had a significant effect on the jury's verdict.

We also reject Evans's argument that the erroneous instruction relieved the state of its burden to prove a required element of the charged crime. The prosecutor's final entreaty to the jury before deliberations began was that Evans intended to cause bodily harm and did cause bodily harm to D.E. We conclude that Evans has not met his heavy burden of showing that his substantial rights were affected by the erroneous jury instruction.

## II.

Evans contends that the prosecutor committed misconduct by eliciting inadmissible testimony and by misstating the law in closing argument. Evans did not object to the claimed errors at trial. We review a claim of unobjected-to trial error under the plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). This standard requires (1) error, (2) that is plain, and (3) that affects substantial rights. *Griller*, 583 N.W.2d at 740. If the three plain-error elements are established, we then consider whether a new trial is necessary to ensure fairness and the integrity of the judicial proceedings. *Id.* In the context of prosecutorial error, if the appellant establishes an error that is plain, the burden shifts to the state to prove the third prong. *Ramey*, 721 N.W.2d at 302. The state must show that there is no reasonable likelihood that the error had a significant effect on the jury's verdict. *Id.*

8

**Eliciting Inadmissible Testimony**

Evans argues that the prosecutor committed error when she elicited inadmissible testimony from the two police officers about safety concerns related to domestic-assault calls, domestic-assault patterns, and the nature of the location where Evans was arrested. Evans does not argue that the district court erred in admitting the testimony, only that the prosecutor erred in eliciting it.

By seeking to elicit clearly inadmissible evidence, a prosecutor may commit misconduct. *State v. Fields*, 730 N.W.2d 777, 782 (Minn. 2007). Having reviewed the trial transcript, we conclude that, even if the challenged testimony was not strictly necessary, there is no indication from the progression or phrasing of the prosecutor's questions that she sought to elicit it. We also note that, after the challenged testimony was given, the prosecutor promptly changed course to other topics. We therefore conclude that the prosecutor did not plainly err in eliciting the challenged testimony.

**Recordings of 911 Call and Statement**

Evans argues that the prosecutor elicited inadmissible evidence by offering into evidence the recordings of D.E.'s 911 call and the statement that she gave to a responding officer. Evans specifically argues that it was improper to offer this evidence during D.E.'s testimony in the state's case-in-chief because D.E.'s credibility had not yet been challenged. As a threshold matter, 911 call recordings are frequently admitted into evidence on a variety of bases unrelated to bolstering credibility. *E.g.*, *State v. Taylor*, 650 N.W.2d 190, 205 (Minn. 2002) ("The district court did not abuse its discretion in concluding that the 911 tape was relevant evidence. The tape provided evidence of

9

appellant's state of mind near the time of the murder and undermined the defense theory that appellant was calm during the family dispute. As to the hearsay objection to the tape, the district court properly ruled that the tape qualified as a present sense impression under Rule 801(d)(1)(D), an excited utterance under Rule 803(2), and an admission by a party-opponent under Rule 801(d)(2)(A).").

An out-of-court statement such as a 911 call or statement to an investigator can also be admissible as substantive evidence if (1) "the declarant testifies at the trial or hearing"; (2) the declarant "is subject to cross-examination concerning the statement"; (3) the statement is "consistent with the declarant's testimony"; and (4) the statement is "helpful to the trier of fact in evaluating the declarant's credibility as a witness." *State v. Nunn*, 561 N.W.2d 902, 908 (Minn. 1997) (quotation omitted). Here, D.E. testified and was subject to cross-examination concerning the recordings, which were consistent with her trial testimony.

Evans is correct that the statements were offered before he had challenged D.E.'s credibility through cross-examination, but credibility was a central issue in the case from the beginning. In his opening statement, Evans made pointed comments to the jury about his negative opinion of D.E.'s mental health. During his cross-examination of D.E., Evans inquired about her recollection, motives, mental health, and medication. We conclude that Evans has not met his burden of showing that the prosecutor committed plain error by offering into evidence the recorded 911 call and D.E.'s recorded statement. In any event, Evans was not prejudiced by the timing of the offering because the evidence

10

would undoubtedly have been properly admitted (albeit less efficiently) after Evans's cross-examination of D.E.

**Misstating the Law in Closing Argument**

Evans argues that the prosecutor misstated the law during closing argument. Misstatements of law constitute prosecutorial misconduct. *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002) (holding that "the prosecutor engaged in misconduct when he . . . misstated the law"). Neither party cites any case law addressing the circumstances here, where the district court provided an erroneous instruction, and the prosecutor merely repeated the instruction in the context of addressing the evidence presented at trial. Although we have concluded that the instruction was erroneous, this is not a case in which the prosecutor attempted to capitalize on a known error—or even a disputed instruction. We conclude under the facts of this case that re-reading the unobjected-to but erroneous jury instruction in closing argument does not rise to the level of prosecutorial error.

**Affirmed.**

**ROSS**, Judge (dissenting)

I respectfully dissent in part. I would remand for a new trial on the sole ground that the district court committed what I believe is plain, reversible error when it instructed the jury that it could convict Evans of the charged crime even if it did not find that he committed an element of the specifically charged crime in the criminal complaint.

The majority accurately describes the underlying law. By rule in Minnesota, criminal jury verdicts must be unanimous. Minn. R. Crim. P. 26.01, subd. 1(5); *State v. Pendleton*, 725 N.W.2d 717, 730 (Minn. 2007). We apply this rule the same way the federal courts have applied a similar federal rule. In *Richardson v. United States*, the federal Supreme Court surveyed earlier cases and concluded that "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element" of the crime of conviction. 526 U.S. 813, 817, 119 S. Ct. 1707, 1710 (1999). Borrowing from federal precedent to construe the state's unanimous-verdict rule, our state supreme court echoes exactly that "a jury must unanimously find that the government has proved each element of the offense." *Pendleton*, 725 N.W.2d 717, 730–31 (quotation omitted).

The majority also accurately observes that the rule requires jury unanimity only as to whether the state has proved each element; it does not require jury unanimity as to the means by which the state has proved each element. *See id*. at 731; *See also Richardson*, 526 U.S. at 817, 119 S. Ct. at 1710. And the majority reasonably highlights our decision in *State v. Dalbec*, where we held that the different subparts of the domestic abuse subdivision were "alternative means by which an assault may be committed, either by

intentionally causing fear of immediate bodily harm . . . or intentionally inflicting . . . bodily harm." 789 N.W.2d 508, 512–13 (Minn. App. 2010), *review denied* (Minn. Dec. 22, 2010). My problem with the conviction here is that the state's very specific criminal complaint did not charge Evans broadly and alternatively with *either* intentionally causing fear of bodily harm *or* intentionally inflicting bodily harm; it particularly charged him *only* with intentionally inflicting bodily harm. The state's choice to identify only one of the two alternative grounds for domestic assault fundamentally distinguishes this case from *Dalbec*. In *Dalbec*, we decided only whether the district court plainly erred by failing to instruct the jury that it must "unanimously determine which action, *among several proved*, supported the element of assault *in a charge of domestic assault*." *Id*. at 513 (emphasis added).

In my view, it is critical that the state chose to limit the complaint and charge Evans with assault *only* on the ground that Evans intentionally physically harmed his wife, not that he generally committed domestic assault (as in *Dalbec*) or that he intentionally put her in fear of harm. Because of this, I believe that the district court unintentionally but materially misled the jury when it instructed it to deem Evans guilty of assault if it found he meant only to put her in fear, even if he did not "intend[] to inflict bodily harm or death." I therefore disagree with the majority that *Dalbec* saves the district court's error from being characterized as plain. I think a district court plainly errs when it tells a jury that it can convict a defendant based on conduct that the state omitted from its narrowly drafted criminal complaint.

I add that even if this case presented the same question we answered in our *Dalbec* decision, the answer might be different today because the continued viability of our holding in *Dalbec* may be in doubt. After we decided *Dalbec*, the supreme court decided *State v. Fleck*, 810 N.W.2d 303 (Minn. 2012). The *Fleck* court did not suggest that assault-by-fear and assault-by-bodily-harm are the same offense, as we held in *Dalbec* and as the state urges in this case. It instead treated these separately, as two distinct offenses, not merely as two distinct means of committing the same offense. *See id.* at 308. It addressed the general assault provision of section 609.02, which defines "[a]ssault" as "(1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10 (2012). This wording is substantively identical to the wording of the domestic abuse statute, which criminalizes "(1) . . . an act with intent to cause fear in another of immediate bodily harm or death; or (2) [an act that] intentionally inflicts or attempts to inflict bodily harm upon another." Minn. Stat. § 609.2242, subd. 1 (2012). More than a dozen times, the *Fleck* court referred to these as separate *offenses*, not merely as different *means* to complete the same offense, calling one "an assault-fear offense" and the other "an assault-harm offense." 810 N.W.2d 303, 303–12. This repeated distinction culminated with the court's describing each as a separate "crime": "We now clarify that assault-harm, Minn. Stat. § 609.02, subd. 10(2) (prohibiting the intentional infliction of bodily harm), is a general-intent crime, that assault-fear, Minn. Stat. § 609.02, subd. 10(1) (prohibiting an act done with the intent to cause fear in another of immediate bodily harm or death) is a specific-intent crime." *Id.* at

312. The supreme court's post-*Dalbec* analysis in *Fleck* adds to my view that the district court committed plain error.

I also believe that this plain error is the kind that warrants reversal for a new trial. Although the prosecutor's closing argument appropriately discussed the relevant question of whether Evans intentionally physically harmed his wife, it also emphasized the district court's erroneous instruction that the jury need *not* find intentional bodily harm to convict:

> Let's look at the elements of the offense. The first element is that the defendant intentionally inflicted or attempted to inflict bodily harm. Bodily harm is physical pain or injury, illness, and any impairment of physical condition. **The instruction also goes on to note that it's not necessary if the defendant intended to inflict bodily harm or death but that the defendant intended that Mrs. Evans would fear that.**

So in the same statement in which the prosecutor mentioned the relevant elements, he also emphasized the false instruction that it was "not necessary" to a guilty verdict for the jury to find that the only charged element had been proved. This erroneous reference by the prosecutor compounded the prejudice created by the district court's instructional error, and it followed several questions by the prosecutor during trial eliciting Evans's wife to testify that she was fearful during the episode.

Given the district court's erroneous instruction (that intentionally-caused fear is enough to convict), the prosecutor's questioning (eliciting testimony that Evans caused fear), and the prosecutor's closing argument (that the jury could convict based solely on intentionally-caused fear), I would reverse the conviction as the fruit of a plain error. I

agree with the majority that evidence of actual bodily harm existed (the officer testified to bruising), but this evidence was not so overwhelming to avoid reversal. This is because one or more juror might not have been persuaded by the state's evidence of intentional harm; this hypothetical juror may have relied instead on the testimony about fear and been persuaded to convict by the repeated instruction "that it's not necessary if the defendant intended to inflict bodily harm or death but that the defendant intended that Mrs. Evans would fear that."

I think the compounded mistake require us to reverse and order a new trial.