*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0295**

State of Minnesota,
Respondent,

vs.

Jennifer Lynn Humphrey,
Appellant.

**Filed December 22, 2014
Affirmed
Stauber, Judge**

McLeod County District Court
File No. 43-CR-13-976

Lori Swanson, Minnesota Attorney General, St. Paul, Minnesota; and

Michael K. Junge, McLeod County Attorney, Glencoe, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Chutich, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from her conviction for fourth-degree assault on a peace officer, appellant argues that the evidence was insufficient to prove that the officer was executing a duty imposed by law. Appellant also asserts that the district court erred by permitting a

state's witness to express an expert opinion that embraced a legal conclusion and by failing to explain in its jury instructions the meaning of one of the elements of the charged offense. We affirm.

**FACTS**

In June 2013, Hutchinson police officer Alicia Nortrom was sent to conduct a welfare check on appellant Jennifer Lynn Humphrey, after Humphrey "threatened to end her life by taking all the pills she had in her possession" in the course of a telephone conversation. Nortrom spoke with Humphrey's son, M.E., who told Nortrom that his mother had a past history of attempting suicide by overdosing on prescription medication and that lately she "just hasn't been acting herself."

Although Nortrom assured Humphrey that she was not in trouble and that Nortrom was only investigating "concerning" statements, Humphrey became "agitated" and "started yelling and screaming profanities." After a second officer, Steve Sickman, arrived, M.E. told the officers that "maybe she does need to be checked out by a medical professional." The officers decided to take her to the hospital for an emergency mental-health hold. Humphrey physically resisted going with the officers. She was restrained, handcuffed, placed in a squad car, taken to the Hutchinson hospital and admitted. At the emergency room, Nortrom filled out an emergency-hold form that did not contain current statutory language.

Humphrey continued to be agitated and combative in the emergency room, and the officers decided to leave because their presence appeared to upset her. About one hour after Nortrom left the emergency room, medical personnel contacted the Hutchinson

2

Police Department to say that Humphrey had left against medical advice and asked the police to find her and bring her back to the emergency room. Nortrom found Humphrey a short distance away from the hospital. Nortrom ordered Humphrey to stop. Humphrey kept walking away but then turned and walked up close to Nortrom. Nortrom tried to push Humphrey away and turn her so that she could handcuff her, and as Nortrom pushed on Humphrey's left shoulder, Humphrey bit Nortrom's right arm just inside the elbow. Other officers arrived and were able to handcuff Humphrey and transport her to the hospital. Because the bite had broken the skin, Nortrom was given a tetanus shot and antibiotics.

Humphrey was charged with fourth-degree assault on a peace officer. At Humphrey's jury trial, Nortrom testified that a police officer may bring a person to the hospital on an emergency hold if "we believe [the person] could be a danger to themselves or others." Nortrom testified that she was told that Humphrey was suicidal and threatening to take pills, M.E. had told her that Humphrey "hasn't been herself" and had made a prior suicide attempt. Nortrom further testified that she believed Humphrey was a danger to herself and that suicidal people "may not, . . . necessarily, [have] mental health issues."

Sickman's testimony was consistent with Nortrom's. When asked if he believed that Humphrey was mentally ill or developmentally disabled, he replied that he did not know, but that he believed "there was some psychiatric issues going on with her that day, that she needed to see a professional." Given a choice, he opined that she was mentally ill based on her suicidal comments and the fact that "she is not thinking properly."

3

The officers' supervisor, Sergeant Adam Ament, confirmed Nortrom's recounting of the events. When Sergeant Ament was asked when a person could be placed on an emergency mental-health hold, he replied that the person must be a potential "harm to themselves or others." He explained that "[t]here's a lot of mentally ill people out there that aren't signed in on holds because they're properly medicated." He also testified that in his expert opinion, Nortrom was executing an official duty when she apprehended Humphrey.

Humphrey testified that she had merely made a sarcastic comment about the pills and that she had an anxiety attack. She thought that the doctor made it clear that she did not belong in the hospital and decided to leave even though a nurse cautioned her not to leave. Humphrey testified that Officer Nortrom "got physical" with no warning, and she bit Nortrom on the hand because Nortrom was trying to break her jaw. She was held only overnight at the hospital because her psychiatrist did not feel she needed hospitalization. Humphrey admitted that she had suffered from mental illness since 2007, including anxiety attacks. The jury convicted Humphrey of fourth-degree assault. This appeal followed.

## DECISION

We review a claim of insufficient evidence by conducting "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach a verdict of guilty." *State v. Porte*, 832 N.W.2d 303, 307 (Minn. App. 2013) (quotation omitted). This court "will not disturb the verdict if the jury, acting with due regard for the presumption of innocence

and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." *Id.* (quotation omitted).

Humphrey was convicted of felony fourth-degree assault; this offense occurs when a person "assaults a peace officer . . . when that officer is effecting a lawful arrest or executing any other duty imposed by law . . . [and] the assault inflicts demonstrable bodily harm [on the peace officer]. Minn. Stat. § 609.2231, subd. 1 (2012). Humphrey argues that the evidence was insufficient to show that the assault occurred while Nortrom was executing a duty imposed by law.

Under Minnesota's emergency-hold law, a peace officer

> may take a person into custody and transport the person to a licensed physician or treatment facility if the officer has reason to believe, either through direct observation of the person's behavior, or upon reliable information of the person's recent behavior and knowledge of the person's past behavior or psychiatric treatment, that the person is mentally ill or developmentally disabled and in danger of injuring self or others if not immediately detained.

Minn. Stat. § 253B.05, subd. 2(a) (2012). Therefore, in order for a peace officer to take a person into custody on an emergency hold, the officer must believe that the person is both a danger to herself and mentally ill or developmentally disabled. Humphrey argues that because Nortrom did not testify that she believed Humphrey to be mentally ill, Nortrom was not executing a duty imposed by law and, therefore, the emergency hold was not lawful. Accordingly, Humphrey asserts that Nortrom's apprehension of her after she left the hospital was not a duty imposed by law.

5

A "person who is mentally ill" is defined as "any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand." Minn. Stat. § 253B.02, subd. 13 (2012). This can be demonstrated by "grossly disturbed behavior or faulty perceptions" that include "a recent attempt or threat to physically harm self or others." *Id.*, subd. 3. Although Nortrom, a lay person not learned in psychology or psychiatry, did not describe Humphrey as "mentally ill," she described agitated or irrational behavior, an apparent threat to commit suicide, and information from M.E. that his mother had previously attempted suicide. The statute does not require that Nortrom be certain that Humphrey is mentally ill or that she will commit suicide; rather, Nortrom was required to have "reason to believe," based either on observation or reliable information about current or past behavior, that Humphrey was mentally ill and a danger to herself. The testimony here is sufficient to support Nortrom's initial decision to take Humphrey into custody and to request that the hospital hold her for observation. If this initial act was proper, Nortrom was executing a duty imposed by law when she took Humphrey into custody a second time at the request of the hospital that was holding Humphrey. It was during this second seizure that Humphrey bit Nortrom.

Despite Nortrom's failure to mirror the language of the statute, the evidence is sufficient, when viewed in the light most favorable to the verdict, to sustain Humphrey's conviction.

6

**II.**

Humphrey argues that the district court abused its discretion by permitting

Sergeant Ament to express an expert opinion that Nortrom was executing a duty imposed

by law when she took Humphrey into custody. Humphrey did not object at trial to this

testimony, and, therefore, this court's review is under the plain-error standard. *See State*

*v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998) (holding that in the case of unobjected-to

error, a defendant must demonstrate that the court's ruling was plain error that affects his

substantial rights and that the error must be addressed to ensure the fairness and integrity

of the proceedings). Humphrey has the burden of showing that there was plain error that

affected her substantial rights. *State v. Sontoya*, 788 N.W.2d 868, 872 (Minn. 2010).

We review the district court's admission of expert testimony for an abuse of

discretion. *Id*. The district court must decide "whether the expert is qualified to express

[an] opinion, and whether the opinion is helpful because it will assist the trier of fact to

understand the evidence or to determine a fact in issue." *Id.* (quotation omitted).

"Opinion testimony is not objectionable merely because it embraces an ultimate issue to

be decided by the jury." *Id.* "If the jury is in as good a position to reach a decision as the

expert, expert testimony would be of little assistance to the jury and should not be

admitted." *State v. Obeta*, 796 N.W.2d 282, 289 (Minn. 2011) (quotation omitted).

Ament testified that he was in charge of the field-training program for the

Hutchinson Police Department. In response to the question, "[W]ere [Nortrom and

Sickman] acting in the discharge of their official duties as [peace officers] with the City

of Hutchinson during that period of time?" he replied, "Yes, they were." In response to

the question, "Is there anything in [the use of force reports] that shows that the officers were doing anything other than acting within the scope of their professional duties?" he replied, "Absolutely not." Finally, in response to the question, "And do you have an opinion as to whether or not the officers were acting within their official duties throughout this incident?" he replied affirmatively. Humphrey argues that Ament "invaded the province of the jury by expressing an expert opinion that embraced a legal conclusion that the assaulted officer was acting within her official duties at the time she was assaulted."

Given the vague responses of Ament, the minimal foundation for his opinion, and his omission of part of the standard under section 253B.05, subdivision 2(a), the district court abused its discretion by admitting an opinion that did little to assist the jury in reaching its verdict. But even if the district court plainly erred in permitting the testimony, Humphrey was not deprived of substantial rights. A person is deprived of substantial rights if there is a reasonable likelihood that the error had a significant effect on the jury's verdict. *Sontoya*, 788 N.W.2d at 873. This court considers the strength of the state's case, the "pervasiveness of the error," and the defendant's opportunity to respond to the testimony. *Id.* Here, the evidence is sufficient to sustain the jury's verdict without Ament's testimony; his testimony is limited, vague, and not particularly helpful, and Ament was cross-examined about his failure to describe and to teach his officers the correct standard for taking a person into custody for an emergency mental-health hold. Because Humphrey has failed to demonstrate that admission of this testimony affected her substantial rights, she has not sustained her burden of showing plain error.

**III.**

Humphrey argues that the district court plainly erred by failing to instruct the jury as to the meaning of the phrase "executing a duty imposed by law." Because Humphrey did not object to the jury instructions, our review is again under the plain-error standard. *See State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (directing courts to use plain-error standard when reviewing unobjected-to jury instructions).

A district court has "broad discretion and considerable latitude in choosing the language of jury instructions," but the instructions must "fairly and adequately explain the law of the case." *Id.* (quotation omitted). This court reviews the district court's choice of jury instructions for an abuse of discretion. *Id.* Because she did not object to the instructions, Humphrey has a heavy burden under the plain-error standard of proving that the instructions were prejudicial. *Id.* at 809.

Instructions must be viewed in their entirety to determine whether they fairly and adequately explain the law; an instruction is erroneous if it materially misstates the law. *State v. Ihle*, 640 N.W.2d 910, 916 (Minn. 2002). Generally, "it is well settled that the court's instructions must define the crime charged and the court should explain the elements of the offense rather than simply read statutes." *Id.*

The district court did not explain the meaning of "executing a duty imposed by law" but simply read the emergency-hold statute. During deliberations, the jury asked for a copy of the fourth-degree assault statute; the district court, with the agreement of the attorneys referred the jury to the instructions where the elements of the crime were set

9

forth. No other explanation of "executing a duty" was offered to the jury. The district court's failure here to explain the elements of the charged offense was plain error.

But Humphrey has failed to show that her substantial rights were affected. The testimony presented to the jury largely centered on whether Nortrom's actions fit within the parameters of Minn. Stat. § 253B.05, subd. 2; the evidence was sufficient to show that Nortom reasonably believed that Humphrey was mentally ill and a danger to herself; and the jury instructions read in their entirety fairly explained that Nortrom had to be executing a duty imposed by law. *See Ihle*, 640 N.W.2d at 917 (concluding that despite failure to explain elements, "[i]n light of the evidence presented and all of the jury instructions given," the defendant had not shown that it was reasonably likely that the error had a significant effect on the verdict). We conclude that Humphrey has failed to show that the district court's error in instructing the jury had a significant effect on the verdict.

**Affirmed.**